# WILLIAM M. KILGOUR

## *v.*

# LEVI GOCKLEY.

1. EJECTMENT—*assignee of mortgage in possession.* The assignee of a mortgage, after condition broken, being in possession of the real estate mortgaged, and also being the holder of the note secured by the mortgage and the assignee thereof, can defend his possession under the mortgage, in ejectment brought by the mortgagor or those claiming under him.

2. SAME—*against whom it lies.* Ejectment can never be maintained against an occupant of real estate, so long as he is lawfully in possession.

3. MORTGAGE—*rights of assignee.* Although the assignee of a mortgage upon real estate, and of the debt secured, may not be able to maintain an action at law, in his own name, by virtue of such assignment, yet, being the lawful owner of the note secured, he has the right to use all remedies necessary for its collection, in the name of the mortgagee, for his own use and benefit, including the remedy by ejectment, and also the taking of possession, upon default, as agent of the mortgagee.

4. JURISDICTION — *burden of proof, when decree finds facts giving it.* Where the record, in a petition by an administrator for an order to sell land to pay debts, shows a finding by the court of the necessary facts to give

jurisdiction, the burden of proof rests upon the party assailing the title thus acquired to show the court did not acquire jurisdiction, by clear and satisfactory evidence. The mere fact that papers were filed about a year before the decree entitled the same as the order of sale, which fail to confer jurisdiction, will not overcome the evidence furnished by the recital in the record.

5. LIMITATION—*proviso in favor of infants construed.* The provision in the Limitation Act of 1839, that it shall not extend to persons under the age of twenty-one years, "provided such person shall commence an action to recover such lands within three years after the several disabilities" therein enumerated shall cease to exist, has reference to the disability of minority, without regard to the age to which such minority may extend. So when, by a subsequent statute, the minority of females ceased at eighteen years, the act of 1839 required the action to be brought within three years after such persons should attain that age.

APPEAL from the Circuit Court of Rock Island county; the Hon. GEO. W. PLEASANTS, Judge, presiding.

Messrs. AYER & KALES, and Mr. JOHN G. MONAHAN, for the appellant.

Mr. C. L. SHELDON, for the appellee.

Mr. JUSTICE DICKEY delivered the opinion of the Court:

This was ejectment. At the trial in the court below, appellee (plaintiff) derived title to the premises in controversy from one Samuel Gockley, who died intestate in 1857, leaving him surviving, being his only children and heirs at law, the appellee and three daughters, sisters of appellee. These sisters afterwards conveyed their interest in the land to appellee. Appellant (defendant below) produced in evidence a mortgage upon the land in controversy, executed in June, 1855, by Samuel Gockley to one Galt, to secure two notes for $200 each, payable one in one year and the other in two years from date. The first note was paid, and the proof tended to show that the second note was never paid, and that it and the mortgage were sold and each assigned to appellant by Galt about the time of the death of Samuel Gockley, and that appellant, in the spring of 1860, took possession of the land, and has held possession of the same ever since.

The court, at the request of the appellee, at the close of the evidence, excluded from the consideration of the jury the mortgage and all the evidence therewith connected, and charged that appellant could not avail himself of the mortgage as a defense to his possession.

The question is thus presented by this record, whether the assignee of a mortgage, after condition broken, being in possession of the real estate mortgaged, also being the holder of the note secured by the mortgage and the assignee thereof, can defend his possession under the mortgage against ejectment brought by the mortgagor or those claiming under him by inheritance, or by grant made subsequent to the mortgage.

It is not questioned that a mortgagee, after condition broken, might maintain ejectment against the mortgagor; nor is it denied that the mortgagee in peaceable possession of the mortgaged property, after condition broken, could lawfully defend such possession against an action by the mortgagor; but it is insisted that the assignee of the mortgage can not defend such possession. It is said the assignee has only an equitable title, and that mortgages, in this State, are not assignable at law.

Though the assignee of a mortgage, and of the note secured by the mortgage, may not be able to maintain an action upon the mortgage, in his own name, by virtue of such assignment, nevertheless, being the lawful owner of the note, he has the right to use all remedies necessary for the collection of it, and has the right to use the name of the mortgagee in enforcing any remedies which by law can be made available for that purpose. He might bring ejectment in the name of the mortgagee, and the assignment of the note and mortgage would be a full authority for such use of the name of the mortgagee, and, after judgment in such ejectment in his favor and against the mortgagor, the assignee of the mortgage could lawfully accept the possession in the name of the mortgagee, acting as the agent of the mortgagee and for his own benefit.

It is not perceived why such assignee may not, in like manner, take peaceable possession without action at law, nor why, having so taken possession, he may not lawfully hold it as

against the mortgagor, or his heirs or grantees, invoking for that purpose the name and title of the mortgagee. His possession, under such circumstances, would be a lawful possession. Ejectment can never be maintained against an occupant, so long as he is lawfully in possession.

It has been held by this court that a mortgage (even after condition broken) is not available to a *stranger*, to show an outstanding title, as a defense to an action of ejectment by the mortgagor. (25 Ill. 28.) But appellant in this case is no stranger. This court said in that case: " It (the mortgage) is available for a mortgagee or his tenant." If available for a tenant, why not for an assignee? The tenant of a mortgagee may avail himself of such a mortgage as a defense, merely because his relations with the mortgagee give him the right to invoke his title or right to possession. The same reason applies with equal force in favor of the assignee of the mortgagee. Where both the mortgage and the note are assigned, the assignee in possession must be regarded as holding under the mortgagee. In substance, the assignment of the note and mortgage is a power of attorney, or license, by the mortgagee to the assignee to collect for his own use the mortgage debt, and, to that end, to use the name of the mortgagee in all appropriate remedies. One of these remedies is, to take possession of the mortgaged premises, and hold possession thereof until full payment. Such possession, when taken, is a legal possession, and constitutes a legal defense to an action of ejectment brought by the mortgagor, or by any one claiming under the mortgagor by a chain of title junior to that of the mortgagee. The ruling of the court below in this regard was erroneous.

Appellant also claimed title in fee under a decree of the circuit court of the proper county, rendered at the May term, 1859, on the 11th of June of that year. He gave, in evidence, an authenticated copy of the decree. It purported to be the final decree in a case entitled " A petition in chancery to sell real estate, by John M. Hagey, administrator of the estate of Samuel Gockley, deceased, against Elizabeth Gockley, Naomi Gockley, Frances Gockley, Levi Gockley, Anna Gockley and

David Hyde," reciting that the case came on that day for trial, "and it appearing, to the satisfaction of the court, that due legal notice had been given to the said defendants in this case, by the service of the same by copy of the summons by the sheriff, and by publication as required by same in such case." Reciting, further, that the answer of Naomi, Frances, Levi and Anna Gockley, infants, by their guardian *ad litem*, having been filed, and on motion of the complainant a special master was appointed to take proof in the case.

"And now, this case being again called, and upon the filing and reading of the report of the master, it was ordered by the court that the report be approved; and the court being satisfied that the allegations of the complainant's bill set forth were true, and that the proceeds of the personal property of the estate had been faithfully applied for the payment of the debts; and that there remained, yet, debts due from the deceased, it was therefore ordered, that the bill of complaint be taken as confessed as against Elizabeth Gockley and David Hyde, and that the administrator should sell the premises in the bill of complaint described and set out (the description embraces the land in controversy in this suit), or so much thereof as may be required to pay the remainder of the debts of said estate and all costs, etc."

Appellant also gave in evidence, an order of the court approving the report of the sale of the premises in controversy by the administrator, and the administrator's deed to appellant reciting the above decree, and a regular sale under it, and conveying the property in controversy in this suit to the appellant. This deed was dated upon the 10th day of September, 1859, duly acknowledged and recorded,

It was insisted by the appellant, at the trial below, that he acquired full title to the property by virtue of this deed.

The court instructed the jury that the decree obtained by the administrator, and under which the premises in question were sold to Kilgour, was absolutely void, and that no title passed or vested in Kilgour by virtue of that decree, or by virtue of the deed made in pursuance thereof.

8—83D ILL.

This *instruction* seems to have been based upon certain evidence offered by the appellee, showing papers on file in the court in which the decree was made, bearing the same title as the title in this decree, and which were dated and filed about a year or year and a half before this decree, which papers consisted of certain summonses and the returns thereon, and a certificate of publication of a notice of an application by this administrator, to sell real estate for the payment of debts, and that these papers are the only foundation, now apparent, for such decree.

These papers, on their face, seem fatally defective. The testimony, however, tended to show that the original suit, to which these papers belonged, was brought to an end, and related to land other than the land in controversy. The testimony also tended to show that there was a second application made by the administrator, for the sale of real estate, and that the decree relied upon by the appellant was a decree made in this second application. The majority of the court, from the examination of the record, are of opinion that the circuit court was not warranted, under the proof, in giving this instruction.

It is not *clearly* shown that these defective papers were the only foundation for the decree in question; nor, in fact, that they related to the same cause. It must be a very rare event, if the files and minutes of the office of the clerk of that court do not contain data which, if produced, would settle this latter question beyond debate. The law requires several dockets to be prepared, of the causes at each term, and the causes are numbered on such dockets, and where a case is continued it is found on the docket of the next term, among what are called " the continued cases;" and when a case is brought into court for the first time, it is found on the docket among what are called " the appearance cases." No evidence on this subject was produced, nor is any reason shown why it was not produced. Where a decree, by its recitals, shows jurisdiction, the burden of proof rests upon the party denying the jurisdiction, and he must produce the best evidence in his power.

The defendant also produced the deed mentioned above, and

relied upon it as giving color of title, and offered evidence tending to prove seven years possession and claim of title under this deed, and the payment of taxes for more than seven successive years before the commencement of this suit.

The evidence tended to show, also, as to two of the heirs of Samuel Gockley (Anna and Naomi), that three years had intervened, after they became respectively eighteen years of age, before the commencement of this suit, but that three years had not elapsed since they had attained the age of twenty-one years. The court instructed the jury that if this suit was commenced within three years from the time they attained the age of twenty-one years, then, although the jury may believe, from the evidence, that Kilgour entered into possession of the premises under color of title acquired in good faith, and paid all the taxes thereon and retained possession for seven years prior to the commencement of this suit, yet such facts would afford no defense against the plaintiff's right to recover to the extent of the interest of those heirs.

The Statute of Limitations, relied upon by the appellant in this regard, provides that the act " shall not extend to lands or tenements where there shall be an adverse title to such lands and tenements, and the holder of such adverse title is under the age of twenty-one years, insane," and so forth, " provided such person shall commence an action to recover such lands within three years after the several *disabilities* herein enumerated shall cease to exist." Gross' Statutes, chapter 24, page 102, section 10.

The minority of females ceases, under our laws, at the age of eighteen years. This presents the question whether a female, wishing to avoid the effect of this Statute of Limitations, must, to effect that end, bring her action within three years after she attains eighteen years of age, or whether she may accomplish that result by bringing her action at any time within three years after she attains twenty-one years of age.

This question has heretofore been considered by this court, and it has been held that, although the letter of the first clause of the exception in the statute applied to all persons

"under the age of twenty-one years," the intention of the statute, and its plain meaning was, that this exception should apply only to such as were under the disability of minority.

At the time of the passage of the Statute of Limitations in question, the minority of all persons extended to twenty-one years; but it was not the mere fact that they were under twenty-one years that constituted a ground for excluding them from the operation of the statute,—it was the fact that the law imposed upon such persons certain disabilities which were usually described as the disabilities of minority.

Now, the language of the proviso in this Statute of Limitations is, that the section shall not apply to persons under twenty-one years of age, "*provided*, the action shall be begun within three years after the disability shall cease," and not within three years after they become twenty-one years of age.

What is this disability? It is the disability which the law imposed upon minority. The statute having limited the minority of females to the age of eighteen, it follows, that as to these heirs, when they attained the age of eighteen the disability of minority did cease, and the three years were to run from that time.

For these errors the judgment below must be reversed, and the cause remanded for further proceedings in accordance with the views expressed in this opinion.

*Judgment reversed.*