GEORGE D. BARRETT *et al.*

*v.*

WATSON S. HINCKLEY.

*Filed at Ottawa January 19, 1888.*

1. EJECTMENT—*legal title as the basis of recovery.* A plaintiff in ejectment, in order to recover, must show in himself a legal title. He can not maintain the action upon a mere equitable title.

2. And when the plaintiff seeks to recover land, claiming a title in fee simple, he must show in himself a fee simple title at law, as contradistinguished from an equitable fee.

3. SAME—*as to one holding the mere naked legal title.* But one having a mere naked legal title to land in which he has no beneficial interest, and

Syllabus.

in respect to which he has no duty to perform, can not maintain ejectment against the equitable owner, or any one having an equitable interest therein with a present right of possession.

4. SAME—*ejectment by a mortgagee—or his assignee.* At the common law, by the execution of a mortgage upon land, the entire legal estate passed to the mortgagee, and unless it was expressly provided that the mortgagor should retain possession till default in payment, the mortgagee might maintain ejectment as well before as after default; and this is the view taken by the common law courts of England, and which has obtained, with certain limitations, in most of the States of the Union, including our own, in which the common law system prevails.

5. But a mortgagee may not in all cases maintain ejectment. The mortgage title exists only for the benefit of the holder of the mortgage debt, and can only be asserted in furtherance of his interest. Therefore, if the mortgagee, for a valuable consideration, should assign the mortgage debt to a third party, and the latter, in default of payment, should take possession of the mortgaged premises, ejectment would not lie against him at the suit of the mortgagee, although the legal title is in him, for the reason it would not be in the interest of the holder of the debt.

6. The estate and interest of a mortgagee may be conveyed to the holder of the debt secured thereby, or even to a third party, by deed, with apt words of conveyance; and the fact that the instrument is in form an assignment, will make no difference. Such assignee, if the owner of the mortgage debt, may, no doubt, maintain ejectment in his own name for his own use, and if not the holder of the debt, the action may be brought in his name, for the use of the holder of the debt.

7. A mortgagee holding a note secured by mortgage on land, in his lifetime pledged the note and mortgage to a third person as collateral security. After the death of the mortgagee, his administratrix and the pledgee, by a separate instrument in writing, sold and assigned the note and mortgage to a purchaser thereof: *Held,* that on the mortgagee's death the legal title in the mortgaged premises vested in his heirs-at-law, and that the pledgee and administratrix, by the assignment of the note and mortgage, could not pass the legal title so as to enable the assignee to maintain ejectment.

8. SAME—*ejectment by a mortgagor—the mortgage as an outstanding title.* A mortgagor or his assignee is the legal owner of the mortgaged premises against all persons except the mortgagee or his assigns. So in ejectment by the mortgagor against a third person, the mortgage can not be set up as an outstanding title to defeat a recovery.

9. MORTGAGES—*relative nature of the title of mortgagor and mortgagee.* Courts of equity, looking at the substance of the transaction rather than the form, and with a view of giving effect to the real intentions of the parties, treat a mortgage as a mere security for the payment of the debt, and the mortgagor as the real beneficial owner of the land, subject to in-

3—124 ILL.

| 124 | 32 |
|---|---|
| 86a | 198 |
| 86a | 199 |

| 124 | 32 |
|---|---|
| 186 | 12521 |
| 186 | 523 |
| 186 | 532 |

| 124 | 32 |
|---|---|
| 188 | 15109 |

| 124 | 32 |
|---|---|
| 93a | 4281 |

| 124 | 32 |
|---|---|
| 190 | 10193 |

| 124 | 32 |
|---|---|
| 193 | 7485 |

| 124 | 32 |
|---|---|
| j202 | 10174 |

| 124 | 32 |
|---|---|
| 113a | 12 61 |

cumbrance of the mortgage, and the interest of the mortgagee simply as a lien, rather than as an estate.

10. The courts of law regard the title of a mortgagee in fee as in the nature of a base or determinable fee. The term of its existence is measured by that of the mortgage debt. When the latter is paid or becomes barred by the Statute of Limitations, the mortgage title is extinguished by operation of law.

11. ASSIGNMENT— *of promissory note— by separate instrument.* A promissory note can not be assigned by a separate instrument, so as to pass the legal title.

12. SAME—*as to note and mortgage.* A transfer or assignment of a note and mortgage securing it, by a separate written instrument, will make the assignee the equitable owner of the note and mortgage, and give him such an equitable interest respecting the mortgaged premises, as to entitle him to have them sold in satisfaction of the note or debt.

13. A mortgage can not be assigned, like negotiable paper, so as to pass the legal title in the instrument, or clothe the assignee with the immunity of an innocent holder, except under certain circumstances; but the mortgagee, or any one succeeding to his title, may, by deed, in the form of an assignment, pass to the assignee the legal as well as the equitable interest of the mortgagee.

14. If a mortgagee conveys the mortgaged premises without assigning the debt to the grantee, the latter will hold the legal title in trust for the owner of the debt. But the mortgage interest, as distinct from the debt, has no appreciable or determinate value, and is really not a fit subject of assignment.

15. SAME—*whether a seal is necessary.* A mere written assignment of a note and a mortgage securing the same, though upon a separate paper, founded upon a valuable consideration, is just as available, for the purpose of passing to the assignee the equitable title to the mortgaged premises, as an instrument under seal; but in order to pass the legal title to land, the instrument must be under seal.

16. SAME—*evidence to show an assignment, so as to pass the legal title.* A plaintiff in ejectment, who purchased a note secured by a mortgage, testified that the assignment of the note and mortgage to him was by the administratrix of the mortgagee and a pledgee of the note, but did not pretend to state its contents, but characterized it as a full assignment of the note and mortgage and the land, which was regarded as but the conclusion of the witness: *Held,* that the proof of the assignment was not sufficient to show a transfer of the legal title to the mortgaged premises. The term "assignment" does not, like the term "deed," or "specialty," signify an instrument under seal, which is indispensable to the passing of the legal title to land.

APPEAL from the Superior Court of Cook county; the Hon. JOSEPH E. GARY, Judge, presiding.

Messrs. WHITEHEAD & PACKARD, for the appellants:

The court erred in admitting improper evidence. Before evidence as to the contents of a lost instrument can be introduced, its due execution must be strictly proved. *Mariner v. Saunders,* 5 Gilm. 113.

Whether or not a document is a "deed," is to be determined by the document, and not by the testimony of a witness that it was· a "deed." *Massure v. Noble,* 11 Ill. 531.

An interrogatory must not assume facts to have been proved which have not been proved. Greenleaf on Evidence, sec. 434.

The loss or destruction of written instruments must be satisfactorily proved before parol evidence of their contents can be received. *Whitehall v. Smith,* 24 Ill. 166 ; *Palmer v. Logan,* 3 Scam. 56 ; *Mariner v. Saunders,* 5 Gilm. 113 ; *Rankin v. Crow,* 19 Ill. 626 ; *Cook v. Hunt,* 24 id. 535 ; *Stow v. People,* 25 id. 81 ; *Dickinson v. Breeden,* id. 186 ; *Owen v. Thomas,* 33 id. 325 ; *Sturges v. Hart,* 45 id. 103 ; *Wing v. Sherrer,* 77 id. 200 ; *Williams v. Case,* 79 id. 356.

While prior possession may be sufficient to enable a plaintiff to recover, in ejectment, against a·trespasser entering without claim of right, yet prior possession of the premises in controversy by the plaintiff, not under color of title, and not brought within the bar of any one of the several statutes of limitation, is not sufficient to enable him to recover against a, defendant who entered peaceably into possession under claim and color of title. Sedgwick & Wait on Trial of Title to Land,. sec. 722 ; Tyler on Ejectment, 784 ; *Bledsoe v. Simms,* 53 Mo. 305 ; *Dunn v. Miller,* 75 id. 260 ; *Lore v. Hill,* 3 Harr. (Del.) 530 ; *Morehouse v. Phelps,* 21 How. 294 ; *Herbert v. Herbert,* Breese, 354 ; *Bowman v. Wettig,* 39 Ill. 416 ; *Barger v. Hobbs,* 67 id. 592 ; *Lancey v. Brock,* 110 id. 609 ; *Picard v. Williams,*. 7 Wheat. 106 ; *Smith v. Burtis,* 6 Johns. 218 ; *Brown v. Smith,*. 83 id. 291.

The mere assignee of a mortgage can not recover in an action of ejectment. *Speer* v. *Hadduck*, 31 Ill. 443; *Olds* v. *Cummings*, id. 189; *Griffin* v. *M. Co.* 52 id. 130; *White* v. *Sutherland*, 64 id. 181; *Camp* v. *Small*, 44 id. 37; *Bourland* v. *Kipp*, 55 id. 376; *Kleeman* v. *Frisbie*, 63 id. 482; *Kilgour* v. *Gockley*, 83 id. 109; *Railway Co.* v. *Loewenthal*, 93 id. 450; *Wilson* v. *Thorp*, 2 Cow. 145; *Jackson* v. *Myers*, 11 Wend. 533; 2 Washburn on Real Prop. (5th ed.) 522, 126; *Carpenter* v. *Longan*, 16 Wall. 271.

Messrs. WILSON & MOORE, for the appellee:

The court did not err in admitting improper testimony. As to secondary evidence, see *Dickinson* v. *Breeden*, 25 Ill. 186; *Deininger* v. *McConnel*, 41 id. 227; Rev. Stat. chap. 30, sec. 36.

Prior possession under claim of ownership of the fee is sufficient to enable the plaintiff to recover, in ejectment, against any one except him who has the legal title or right of possession. *Smith* v. *Lorillard*, 10 Johns. 339; *Herbert* v. *Herbert*, Beecher's Breese, 357; *Brooks* v. *Bruyn*, 18 Ill. 542; *Barger* v. *Hobbs*, 67 id. 597.

A mortgagee, after condition broken, may maintain ejectment. *Finlon* v. *Clark*, 118 Ill. 32; *Kilgour* v. *Gockley*, 83 id. 109; *Bank* v. *Dayton*, 116 id. 257.

An assignment by deed puts the assignee in the place of the mortgagee. It passes the legal estate, and enables the assignee to foreclose in his own name. The mortgagee has no longer any right or interest in or claim to the lands mortgaged, and an action in his name in respect to them can be no longer maintained. Jones on Mortgages, sec. 787.

Mr. JUSTICE MULKEY delivered the opinion of the Court:

Watson S. Hinckley, claiming to be the owner in fee of the land in controversy, on the 26th day of February, 1885, brought an action of ejectment, in the Superior Court of Cook county, against the appellants, George D. Barrett, Adalina S. Barrett,

William H. Whitehead, and others, to recover the possession thereof. There was a trial of the cause before the court, without a jury, resulting in a finding and judgment for the plaintiff, and the defendants appealed.

The evidence tends to show the following state of facts: In 1870 Thomas Kearns was in possession of the land, claiming to own it in fee simple. On August 3 of that year he sold and conveyed it to William H. W. Cushman for the sum of $80,000. Cushman gave his four notes to Kearns for the balance of the purchase money,—one for $12,500, maturing in thirty days; three for $16,875 each, maturing, respectively, in two, three and four years after date, and all secured by a mortgage on the premises. The notes seem to have all been paid but the last one. In 1878 Kearns died, and his widow, Alice Kearns, administered on his estate. Previous to his death, however, he had hypothecated the mortgage and last note to secure a loan from Greenebaum. Subsequently, and before the commencement of the present suit, Greenebaum, in his own right, and Mrs. Kearns, as administratrix of her husband, for value, sold and assigned, by a separate instrument in writing, the mortgage and note to the appellee, Watson S. Hinckley.

This is, in substance, the case made by plaintiff. The defendants showed no title in themselves or any one else. The conclusion to be reached, therefore, depends upon whether the case made by the plaintiff warranted the court below in rendering the judgment it did.

It is claimed by appellants, in the first place, that much of the evidence relied on by appellee to sustain the judgment below was improperly admitted by the court, and various errors have been assigned upon the record questioning the correctness of the rulings of the court in this respect. They, however, go further, and insist, that even conceding the facts to be as claimed by appellee himself, they are not sufficient, in law, to sustain the action. As the judgment below will have to be

reversed on the ground last suggested, it will not be necessary to consider the other errors assigned.

We propose to state, as briefly as may be, some of the reasons which have lead us to the conclusion reached. In doing so, it is perhaps proper to call attention, at the outset, to some considerations that should be steadily kept in mind as we proceed, and to which we attach not a little importance.

It is first to be specially noted, that this is a suit at law, as contradistinguished from a suit in equity. It is brought to enforce a naked legal right, as distinguished from an equitable right. The plaintiff seeks to recover certain lands, the title whereof he claims in fee simple. To do this, he is bound to show in himself a fee simple title at law, as contradistinguished from an *equitable fee.* (*Fischer* v. *Eslaman*, 68 Ill. 78; *Wales* v. *Bogue*, 31 id. 464; *Fleming* v. *Carter*, 70 id. 286; *Dawson* v. *Hayden*, 67 id. 52.) Has he done this? He attempts to derive title remotely through the mortgage from Cushman to Kearns, but upon what legal theory, is not very readily perceived. His immediate source of title, however, seems to be Mrs. Kearns, as administratrix of her husband, and Greenebaum, as pledgee of the note and mortgage. The instrument through which he claims, is lost or destroyed, and all we know concerning its character is what the plaintiff himself says about it. As to its contents, he does not pretend to state a single sentence or word in it, but characterizes it as an *assignment*, and gives the conclusions which he draws from it, in general terms, only. After stating his purchase of the note and mortgage in January, 1880, he says: "The *assignment* was from Mrs. Kearns, the administratrix of Thomas Kearns' estate, and Elias Greenebaum, the banker. At the time of the purchase a separate writing was given to me,—a full assignment. * * * It was a very explicit assignment, or full assignment of the note and mortgage and the land, the property, and all the right and title to the land." It will be observed, the instrument is throughout characterized as an assignment, only,

which does not, like the term "deed," or "specialty," signify an instrument under seal. | A mere written assignment, founded upon a valuable consideration, is just as available for the purpose of passing to the assignee the equitable title to land as an instrument under seal. Such being the case, we would clearly not be warranted in inferring that the assignment was under seal from the simple fact that the witness gives it as his opinion that the instrument was "a full assignment" of the land, which is nothing more than the witness' opinion upon a question of law. There not being sufficient evidence in the record to show that the assignment was under seal, it follows, that even conceding the legal title to the property to have been in Mrs. Kearns and Greenebaum, or either of them, it could not have passed to the appellee by that instrument, and if not by it, not at all, because that is the only muniment of title relied on for that purpose. This conclusion is, of course, based upon the fundamental principle that an instrument *inter partes*, in order to pass the legal title to real property, must be under seal.

But this is not all. Even conceding the sufficiency of the assignment to pass the legal title, the record, in our opinion, fails to show that the assignors, or either of them, had such title; hence, there was nothing for the assignment to operate upon, so far as the legal estate in the land is concerned. Having no such title, they could not convey it. *Nemo plus juris ad alium transferre potest quam ipse habet.* That the legal estate in this property was not either in Greenebaum or Mrs. Kearns at the time of the assignment to plaintiff, is demonstrable by the plainest principles of law. Let us see. Thomas Kearns was the owner of this property *in fee.* He conveyed it in fee to Cushman. The latter, as a part of the same transaction, reconveyed it, by way of mortgage, to Kearns. By reason of this last conveyance, Kearns became mortgagee of the property, and Cushman mortgagor. According to the English doctrine, and that of some of the States of the Union,

including our own, Kearns, at least as between the parties, took the legal estate, and Cushman the equitable. According to other authorities, Kearns, by virtue of Cushman's mortgage to him, took merely a lien upon the property to secure the mortgage indebtedness, and the legal title remained in Cushman. For the purposes of the present inquiry it is not important to consider just now, if at all, which is the better or true theory. It is manifest, and must be conceded, that the legal estate in the land, after the execution of the mortgage, was either in the mortgagee or mortgagor, or in both combined. Such being the case, it is equally clear, appellee, to succeed, must have deduced title through one or both of these parties. This could only have been done by showing that the legal title had, by means of some of the legally recognized modes of conveying real property, passed from one or both of them to himself. This he did not do or attempt to do. Indeed, he does not claim through them, nor either of them. Not only so, neither Mrs. Kearns nor Greenebaum, through whom appellee does claim, derives title through any deed or conveyance executed by either the mortgagor or mortgagee. Nor does either of them claim as heir or devisee of the mortgagor or mortgagee. As the assignment of the note and mortgage to appellee did not, as we hold, transfer or otherwise affect the legal title to the land, it may be asked, what effect, then, did it have? This question, like most others pertaining to the law of mortgages, admits of two answers, depending upon whether the rules and principles which prevail in courts of equity, or of law, are to be applied. If the latter, we would say none; because, as to the note, that could not be assigned by a separate instrument, as was done in this case, so as to pass the legal title. (*Ryan* v. *May*, 14 Ill. 49; *Fortier* v. *Darst*, 31 id. 213; *Chickering* v. *Raymond*, 15 id. 362.) As to the mortgage, it is well settled that could not be assigned, like negotiable paper, so as to pass the legal title in the instrument or clothe the assignee with the immunity of an innocent holder, except under certain

circumstances, which do not apply here. (*Chicago, Danville and Vincennes Railway Co.* v. *Loewenthal*, 93 Ill. 433; *Hamilton County* v. *Lubukee*, 51 id. 415; *Olds* v. *Cummings*, 31 id. 188; *McIntire* v. *Yates*, 104 id. 491; *Fortier* v. *Darst*, 31 id. 213.) But that the mortgagee, or any one succeeding to his title, might, by deed in the form of an assignment, pass to the assignee the legal as well as the equitable interest of the mortgagee, we have no doubt, though there is some conflict on this subject. (2 Washburn on Real Prop. p. 115, and authorities there cited.) Yet the assignors in the case in hand, not having the legal title, as we have just seen, could not, by any form of instrument, transmit it to another. If, however, the rules and principles which obtain in courts of equity are to be applied, we would say, that by virtue of the assignment the appellee became the equitable owner of the note and mortgage, and that it gave him such an interest or equity respecting the land as entitled him to have it sold in satisfaction of the debt.

There is, perhaps, no species of ownership known to the law which is more complex, or which has given rise to more diversity of opinion, and even conflict in decisions, than that which has sprung from the mortgage of real property. By the common law, if the mortgagor paid the money at the time specified in the mortgage, the estate of the mortgagee, by reason of the performance of the condition therein, at once determined and was forever gone, and the mortgagor, by mere operation of law, was remitted to his former estate. On the other hand, if the mortgagor failed to pay on the day named, the title of the mortgagee became absolute, and the mortgagor ceased to have any interest whatever in the mortgaged premises. By the execution of the mortgage, the entire legal estate passed to the mortgagee, and unless it was expressly provided that the mortgagor should retain possession till default in payment, the mortgagee might maintain ejectment as well before as after default. This is the view taken by the common law courts of England, and which has obtained, with certain lim-

itations, in most of the States of the Union, including our own, in which the common law system prevails.

In *Carroll* v. *Ballance*, 26 Ill. 9, which was ejectment by the mortgagee against the assignee of the mortgagor, to recover the mortgaged premises, this court thus states the English rule on the subject: "In England, and in many of the American States, it is understood that the ordinary mortgage deed conveys the fee in the land to the mortgagee, and under it he may oust the mortgagor immediately on the execution and delivery of the mortgage, without waiting for the period fixed for the performance of the condition,—citing Coot on Mortgages, 339; *Blaney* v. *Bearce*, 2 Greenlf. 132; *Brown* v. *Cramer*, 1 N. H. 169; *Hobart* v. *Sanborn*, 13 id. 226; *Northampton Paper Mills* v. *Ames*, 8 Metc. 1. And this right is fully recognized by courts of equity, although liable to be defeated at any moment, in those courts, by the payment of the debt." Again, in *Nelson* v. *Pinegar*, 30 Ill. 481, which was a bill by a mortgagee to restrain waste, it is said: "The complainant, as mortgagee of the land, was the owner in fee, as against the mortgagor and all claiming under him. He had the *jus in re* as well as *ad rem*, and being so, is entitled to all the rights and remedies which the law gives to such an owner." So, in *Oldham* v. *Pfleger*, 84 Ill. 102, which was ejectment by the heirs of the mortgagor against the grantee of the mortgagor, this court, in holding the action could not be maintained, said: "Under the rulings of this court, the mortgagee is held, as in England, in law, the owner of the fee, having the *jus in re* as well as the *jus ad rem*." In *Finlon* v. *Clark*, 118 Ill. 32, the same doctrine is announced, and the cases above cited are referred to with approval. *Taylor* v. *Adams*, 115 Ill. 574.

Courts of equity, however, from a very early period, took a widely different view of the matter. They looked upon the forfeiture of the estate at law because of non-payment on the very day fixed by the mortgage, as in the nature of a penalty, and, as in other cases of penalties, gave relief accordingly.

This was done by allowing the mortgagor to redeem the land, on equitable terms, at any time before the right to do so was barred by foreclosure. The right to thus redeem after the estate had become absolute at law in the mortgagee, was called the "equity of redemption," and has continued to be so called to the present time. These courts, looking at the substance of the transaction rather than its form, and with a view of giving effect to the real intentions of the parties, held that the mortgage was a mere security for the payment of the debt; that the mortgagor was the real beneficial owner of the land, subject to the incumbrance of the mortgage; that the interest of the mortgagee was simply a lien and incumbrance upon the land, rather than an estate in it. In short, the positions of mortgagor and mortgagee were substantially reversed in the view taken by courts of equity. These two systems grew up side by side, and were maintained for centuries without conflict, or even friction, between the law and equity tribunals by which they were respectively administered. The equity courts did not attempt to control the law courts, or even question the legal doctrines which they announced. On the contrary, their force and validity were often recognized in the relief granted. Thus, equity courts, in allowing a redemption after a forfeiture of the legal estate, uniformly required the mortgagee to reconvey to the mortgagor, which was, of course, necessary, to make his title available in a court of law.

In maintaining these two systems and theories in England, there was none of that confusion and conflict which we encounter in the decisions of the courts of this country, resulting chiefly from a failure to keep in mind the distinction between courts of law and of equity, and the rules and principles applicable to them, respectively. The courts there, by observing these things, kept the two systems intact, and in this condition they were transplanted to this country, and became a part of our own system of laws. But other causes have contributed to destroy that certainty and uniformity which for-

merly prevailed with us. Chiefly among these causes may be·
mentioned the statutory changes in the law in many of the·
States, and the failure of the courts and authors to note those·
changes in their expositions of the law of such States. Per-
haps another fruitful source of confusion on this subject is the
fact that in many of the States the common law forms of
action have been abolished by statute, and instead of them a
single statutory form of action has been adopted, in which
legal and equitable rights are administered at the same time
and by the same tribunal. Yet the distinction between legal
and equitable rights is still preserved, so that although the
action, in theory, is one at law, it is nevertheless subject to be
defeated by a purely equitable defence.

Under the influence of these statutory enactments and rad-
ical changes in legal procedure, by which legal and equitable
rights are given effect and enforced in the same suit, the equi-
table theory of a mortgage has, in many of these States, en-
tirely superseded the legal one. Thus, in New York it is said,
in the case of *Trustees of Union College* v. *Wheeler et al.* 61
N. Y. 88, "that a mortgage is a mere chose in action. It gives
no legal estate in the land, but is simply a lien thereon, the
mortgagor remaining both the legal and equitable owner of
the fee." Following this doctrine to its logical results, it is
held by the courts of that State that ejectment under the code
will not lie, at the suit of the mortgagee, against the owner of
the equity of redemption. (*Murray* v. *Walker*, 31 N. Y. 399.)
In strict conformity with the theory that the mortgagee has
no estate in the land, but a mere lien as security for his debt,
the courts of New York, and others taking the same view, hold
that a conveyance by the mortgagee, before foreclosure, with-
out an assignment of the debt, is, in law, a nullity. (*Jackson*
v. *Curtis*, 19 Johns. 325; *Wilson* v. *Troup*, 2 Cow. 231; *Jack-
son* v. *Willard*, 4 Johns. 41.) And this court seems to have
recognized the same rule as obtaining in this State, in *Delano*
v. *Bennett*, 90 Ill. 533.

The New York cases just cited, and all others taking the same view, are clearly inconsistent with the whole current of our decisions on the subject, as is abundantly shown by the authorities already cited. The doctrine would seem to be fundamental, that if one *sui juris,* having the legal title to land, intentionally delivers to another a deed therefor containing apt words of conveyance, the title, at law, at least, will pass to the grantee; but for what purposes or uses the grantee will hold it, or to what extent he will be able to enforce it, will depend upon circumstances. If the mortgagee conveys the land without assigning the debt to the grantee, the latter would hold the legal title as trustee for the holder of the mortgage debt. (*Sanger* v. *Bancroft,* 12 Gray, 367; *Barnard* v. *Eaton,* 2 Cush. 304; *Jackson* v. *Willard,* 4 Johns. 40.) It is true, the interest which passes is of no appreciable value to the grantee. Thus, in the case last cited, Chancellor KENT, in speaking of it, says: "The mortgage interest, as distinct from the debt, is not a fit subject of assignment. It has no determinate value. *If it should be assigned,* the assignee must hold the interest at the will and disposal of the creditor who holds the bond." In 4 Wait's Actions and Defences, page 565, the rule is thus stated: "By the common law, a mortgagee *in fee* of land is considered as absolutely entitled to the estate, which he may devise or transmit by descent to his heirs." In conformity with this view, Pomeroy, in his work on Equity Jurisprudence, (vol. 3, page 150,) in treating of this subject, says: "In law, the mortgagee may convey the land itself by deed, or devise it by will, and on his death, intestate, it will descend to his heirs. In equity, his interest is a mere thing in action, assignable as such, and a deed by him would operate merely as an assignment of the mortgage; and in administering the estate of a deceased mortgagee, a court of equity treats the mortgage as personal assets, to be dealt with by the executor or administrator."

We have already seen, that under the decisions of this court, and by the general current of authority, a mortgage is not assignable at law by mere indorsement, as in the case of commercial paper; but, on the other hand, the estate and interest of the mortgagee may be conveyed to the holder of the indebtedness, or even to a third party, by deed, with apt words of conveyance, and the fact that it is, in form, an assignment, will make no difference. (2 Washburn on Real Prop. 115, 116.) Such an assignee, if owner of the mortgage indebtedness, might, no doubt, maintain ejectment in his own name, for his own use; or the action might be brought in his name, for the use of a third party owning the indebtedness. (*Kilgour* v. *Gockley*, 83 Ill. 109.) So in this case, if the action had been brought in the name of Kearns' heirs, for the use of Hinckley, no reason is perceived why the action might not be maintained.

It must not be concluded, from what we have said, that the dual system respecting mortgages, as above explained, exists in this State precisely as it did in England prior to its adoption in this country, for such is not the case. It is a conceded fact, that the equitable theory of a mortgage has, in process of time, made in this State, as in others, material encroachments upon the legal theory which is now fully recognized in courts of law. Thus, it is now the settled law that the mortgagor or his assignee is the legal owner of the mortgaged estate, as against all persons except the mortgagee or his assigns. (*Hall* v. *Lance*, 25 Ill. 250, *277; *Emory* v. *Keighan*, 88 id. 482.) As a result of this doctrine, it follows that in ejectment by the mortgagor, against a third party, the defendant can not defeat the action by showing an outstanding title in the mortgagee. (*Hall* v. *Lance, supra.*) So, too, courts of law now regard the title of a mortgagee in fee, in the nature of a base or determinable fee. The term of its existence is measured by that of the mortgage debt. When the latter is paid off, or becomes barred by the Statute of Limitations, the mortgagee's title is extinguished by operation of law. (*Pollock* v. *Maison,*

41 Ill. 516; *Harris* v. *Mills*, 28 id. 44; *Gibson* v. *Rees*, 50 id. 383.) Hence the rule is as well established at law as it is in equity, that the debt is the principal thing, and the mortgage an incident. So, also, while it is indispensable in all cases to a recovery in ejectment, that the plaintiff show in himself the legal title to the property, as set forth in the declaration, except where the defendant is estopped from denying it, yet it does not follow that because one has such title, he may, under all circumstances, maintain the action,—and this is particularly so in respect to a mortgage title. Such title exists for the benefit of the holder of the mortgage indebtedness, and it can only be enforced by an action in furtherance of his interests,— that is, as a means of coercing payment. If the mortgagee, therefore, should, for a valuable consideration, assign the mortgage indebtedness to a third party, and the latter, after default in payment, should take possession of the mortgaged premises, ejectment would not lie against him at the suit of the mortgagee, although the legal title would be in the latter, for the reason it would not be in the interest of the owner of the indebtedness. In short, it is a well settled principle, that one having a mere naked legal title to land in which he has no beneficial interest, and in respect to which he has no duty to perform, can not maintain ejectment against the equitable owner, or any one having an équitable interest therein with a present right of possession. This case, with a slight change of the circumstances, would afford an excellent illustration of the principle. Suppose the present plaintiff had obtained possession under his equitable title to the note and mortgage, and the heirs of Kearns, who hold the legal title, had brought ejectment against him, the action clearly could not have been maintained, for the reasons we have just stated. But it does not follow, because such an action would not lie against him, that he could, upon a mere equitable title, maintain the action against others. (*Cottrell* v. *Adams*, 2 Biss. 351; 9 Myers' Fed. Dec. 240.) The question in that case was

almost identical with the question in this, and the court reached the same conclusion we have. See, also, *Speer* v. *Hadduck*, 31 Ill. 439.

For the reasons stated, the judgment of the court below is reversed, and the cause remanded for further proceedings not inconsistent with this opinion.

*Judgment reversed.*