## JOHN HIGHLAND V. THE CITY OF GALVESTON.

### (Case No. 1107.)

1. LESSOR AND LESSEE.— A lot owner in the city of Galveston holds his lot subject to the burthen of improving or being charged with the cost of improving the sidewalk in front thereof; and his lessee holding subject to the same charge, he can no more recover damages from the city for abandoning the completion of partial improvements on the sidewalk which the owner should have made than the owner himself could.

2. IMPROVEMENT OF SIDEWALKS.— The cost of improving a sidewalk in the city of Galveston, or its cost when constructed, attaches to the lot in the possession of any party having an interest therein; that interest is subordinate to the burden or charge, and is liable to be defeated by the sale of the lot, regularly made, to enforce the collection of the debt.

3. SAME.— The duty to improve sidewalks in Galveston devolves on the lot owner when the improvement is ordered by a city ordinance, and the liability of the lot owner to be charged with the cost on his failure to improve, attaches on the passage of the ordinance ordering the improvement.

4. IMPROVEMENT OF SIDEWALKS IN GALVESTON.— See charge of court, held correct, as to the duties and liabilities of a lot owner in Galveston, in regard to the improvement of sidewalks.

ERROR from Galveston. Tried below before the Hon. Wm. H. Stewart.

Suit by John Highland against the city of Galveston for damages on account of the erection of a brick wall four feet high along the outer edge of the sidewalk of his premises, situated on the southwest corner of Strand and Bath avenue in that city, whereby the approaches thereto were in great measure obstructed, and his business, theretofore prosperous, injured. He alleged that he leased the place prior thereto for five years, because of its central and advantageous position for his business, and had improved the location and established a fine paying business, when defendant, on February 1, 1875, erected said wall, against his protest, and thereby cut off his house from the public and ruined his patronage. He

claimed that his house thus walled in, was at that time and had been for years a first-class boarding and lodging house, known as the "New Orleans House," with saloon and bar-room attached for the refreshment and entertainment of his patrons, and that he realized therefrom a monthly net profit of $960, and had every reason to expect a continuance of such profit until the end of his lease, October 1, 1875. He claimed that after the wall was erected, persons seeking the house would sometimes, particularly at night, injure themselves by falling over it, or striking against it, and that it constituted so inconvenient and dangerous an obstruction that his patrons soon discontinued visits to his house altogether, and his business was thus lost.

The petition alleged that the streets and sidewalks were public highways, so used continuously since the organization of the city, and that the action of defendant in building the wall was wrongful and unlawful. Actual damage was laid at $7,680, and judgment asked for that sum.

Defendant answered: 1. General demurrer. 2. Special exception, denying lawful right of plaintiff to recover damages caused by loss of revenues and profits of his business alleged to have resulted from erection of the wall. 3. General denial. 4. Plea that if any damage resulted to plaintiff by the erection of the wall, the same was due to his and his landlord's neglect to fill up the contiguous sidewalk to the established grade of the city; that the filling and grading of sidewalk was, shortly before the construction of wall, ordered by the city, and that the wall was erected to serve as a curbing thereto. 5. Plea that the wall was built by defendant under authority of law and according to the grade established by the city engineer, and hence defendant was not liable.

Plaintiff by first supplemental petition, June 27, 1878, excepted generally to the answer; and specially, 1. To the

allegations of neglect of duty on the part of plaintiff and his landlord in not filling sidewalk to grade, because the neglect is not shown to the court by reference to any matter of lawful regulation transgressed by the plaintiff. 2. To the allegation that it was within the lawful power of defendant to obstruct the sidewalk by the wall, because the power lawfully to erect the obstruction is not shown by the answer. 3. To the allegation that the wall conformed to the established grade and was authorized by the ordinances of defendant, because the ordinances are not set forth or sufficiently pleaded. Issue was also joined by plaintiff, with defendant, upon the defenses pleaded as matters of fact.

Verdict and judgment for defendant.

The city of Galveston, by its charter and ordinances, had the authority, and in pursuance thereof did, on the 28th day of April, A. D. 1874, establish the grade of the streets and sidewalks of that city.

It was in evidence that the wall complained of was erected as a curbing to an intended sidewalk, undertaken to be constructed by the city; that it was placed at the proper line for that purpose, and was of proper construction, and was of height corresponding with the grade of the streets and sidewalks of the city, the grade being six feet and two-tenths of a foot measured from mean low tide. This wall also served as a wall to the gutter on Bath avenue between the street and sidewalk, and kept the water from overflowing plaintiff's premises. It was in evidence, that the city began the work by virtue of a resolution of its council, directing the filling and completion of the sidewalk; that the curbing being built, the city prosecuted the work no further.

Sections 6 and 7 of revised ordinance provide that sidewalks around said premises shall be filled up to the grade established by the city engineer. Section 2 of revised ordinance provides that notice shall be given to

the property owners whose sidewalks may not be of proper material, and in conformity with grade.

The plaintiff established the material allegations of his petition.  He asked the court to charge in effect: 1. That if the city, after building the wall, failed further to prosecute the work by filling in and completing the sidewalk, although notified and requested to do so by plaintiff, but abandoned the same, whereby the wall became and continued to be an obstruction to the approaches to the New Orleans House, rendering the same less accessible and convenient to the public, and in fact dangerous to reach, either in the day or night, and causing the water to stand after rains, between the wall and the house, so as to overflow plaintiff's premises and make the house and premises less convenient, accessible, inviting and comfortable than before the erection of said wall; and if you further believe that by reason of the wall and the effects of its erection, plaintiff lost his patronage and custom as the keeper of said house and premises, then he is entitled to a verdict for such sum as the evidence may show that he has been damaged from the causes named.  2. The measure of plaintiff's damage in such case is the net profits, clear of all expense, which the evidence may satisfy you would have been realized by plaintiff in carrying on his business, from the date the same was destroyed by reason of the existence of the wall to the date of the expiration of plaintiff's lease.  And if you find that from the date of the erection of the wall to the time of the destruction of plaintiff's business, the net profits realized by plaintiff in his business were less than they had been customarily, and upon an average for the like period of time immediately preceding said erection, the plaintiff is also entitled to your verdict for the difference between his customary profits and his diminished profits."  This charge was refused.

It was in evidence that the curbing was in strict con-

formity to the grade of the city, and that it served as a wall to the gutter on the west side of Twenty-fifth street and in part on Strand street, and kept the water from overflowing plaintiff's premises. It was in evidence that the space between the wall and house could have been filled at a cost of $200, and egress by crossing the wall for $25.

The fourth charge asked by plaintiff was as follows, and was refused:

"If the jury believe from the evidence that the wall complained of was erected by the city, or under its authority, as and for a curbing to a sidewalk which it had resolved or undertaken to construct; and that after building said wall for said purpose the city failed further to prosecute the work by filling in and completing said sidewalk, although notified and requested so to do by plaintiff, but abandoned the same, whereby said wall became and continued to be an obstruction to the approaches to said New Orleans House, rendering the same less accessible and convenient to the public, and in fact dangerous to reach in the day or night, and causing the water to stand, after rains, between the wall and the house, so as to overflow plaintiff's premises and render the said house and premises less accessible, convenient, inviting and comfortable than before the erection of said wall; and if you further believe that by reason of said wall and the said effects of its erection, plaintiff lost his patronage and custom as the keeper of said house and premises — then he is entitled to a verdict for such sum as the evidence may show that he has been damaged from the causes named. In ascertaining the amount, if any, of such damage, you may consider and compare the value and profits of the plaintiff's average customary monthly business, next preceding and after the erection of said wall, until the expiration of plaintiff's lease — not as fixing a conclusive measurement of such damage, but as proper to be taken into your con-

sideration, together with other evidence that may be before you, in arriving at the true damage suffered by plaintiff." It was in evidence that the space between the house and the wall was never filled up by the city.

The court charged, among other things, as follows:

"The city also has authority to construct gutters between the sidewalk and the street, the tops of walls of gutters not to be higher than the established grade, and the curbing may constitute one of the walls of the gutter. And the city has the right to construct curbing at the outer edge of the sidewalk, and such curbing the city has authority to construct as high as her established grade, and, when properly constructed, if the top of such wall or curbing is not above her established grade, regardless of whether the top of such wall be several feet above the adjacent lot: in such case the owner of the lot, or his lessee, could not recover any damages from the city by reason of such wall interfering with his business; for in such case, if the contractor quit work and did not perform the contract of filling the sidewalk, but abandoned the same, then the owner of the lot, or his lessee, could fill up the sidewalk to the top of the curbing, or construct steps or other suitable approaches to his premises."

*F. Charles Hume*, for plaintiff in error, in support of his position that error was committed in refusing the first charge asked for the plaintiff, cited Simler *v.* City of St. Paul, 23 Minn., 408; Chicago *v.* Broply (1876), Chicago Legal News of 29th July, 1876; Chicago *v.* Johnson, 53 Ill., 91; Rowe *v.* Portsmouth (1876), 56 N. H., 291; Ashley *v.* Port Huron (1877), 35 Mich., 296; Barnes *v.* Dist. of Columbia, 91 U. S., 551; Stetson *v.* Faxon, 15 Pick. (Mass.), 147; Wilkes *v.* Hungenford M. Co., 29 Eng. C. L., 537; Jefferson, Madison & Ind. R. Co. *v.* Esterle (Ky. C. of A., 1878), 6 Reporter, 16; Wegeman *v.* City of Jefferson, 61 Mo., 56; Clardy *v.* Callicote, 24 Tex.,

172; Waco Tap R. Co. *v.* Shirley, 45 Tex., 355; United States *v.* Speed, 8 Wall., 77; Sedgwick's Measure of Dam., 6th ed., 89, note 4; Allison *v.* Chandler, 11 Mich., 542; Hanover *v.* Railroad Co., 55 Penn. St., 402; Dubois *v.* Glanb, 52 Penn. St., 238; Simmons *v.* Brown, 5 R. I., 299; Lacour *v.* Mayor of N. Y., 3 Duer, 406; Chapman *v.* Kirby, 49 Ill., 217.

On the proposition that error was committed in refusing the fourth charge asked, he cited Clardy *v.* Callicote, 24 Tex., 172; Allison *v.* Chandler, 11 Mich., 542; Simmons *v.* Brown, 5 R. I., 299; Fultz *v.* Wycoff, 25 Ind., 321; Chapman *v.* Kirby, 49 Ill., 217; Lacour *v.* New York, 3 Duer, 406; Ingram *v.* Lawson, 37 Eng. C. L., 590.

*Robert V. Davidson,* for defendant in error.

GOULD, ASSOCIATE JUSTICE.— But two questions need be considered:

First. Had the plaintiff occupying the premises as tenant or lessee of the owner any other or greater right to recover damages than the lot owner would have had, had he himself been the occupant? In our opinion this question must be answered in the negative. The lessee holds under the owner, and takes only such right as the owner can convey. The owner holds his lot subject to the burden of improving the sidewalk in front thereof at the requirement of the city council, or at all events, subject to be charged with the cost of such improvement, and his lessee would also hold subject to the same charge. Unless the occupant of the premises, being the owner thereof, could have recovered damages of the city because of its failure to complete the construction of the sidewalk which it had commenced, he could not recover, being only a tenant.

It is to be observed that the question is not who should defray the cost of the improvement, the owner of the

fee or the lessee for years, or in what proportion such cost should be a charge on the different estates, such as for years, for life or in fee, which different parties may have therein. See Norwich v. Hubbard, 22 Conn., 587; Whyte v. Mayor and Aldermen of Nashville, 2 Swan, 364. The burden of the improvement when ordered, or its cost when constructed, attached to the lot in the possession of any party having an interest therein. Whatever that interest, it was subordinate to that burden or charge, and was liable to be defeated by the sale of the lot regularly made to enforce the collection of the cost.

The second question is: Under the charter and ordinances of the city, did the duty of making a sidewalk improvement, regularly ordered to be made by the city council, devolve upon the owner, unless he was served with a notice to construct it? By the ordinances of the city, where the lot was within the fire limits, written notice was to be served on all property owners to construct the sidewalks within a period of sixty days after notice, and on their failure, the mayor and chairman of the committee on streets were authorized to have them constructed, the cost being made a charge on the property. In our opinion, the duty to make the improvement devolved on the owner of the lot where it was ordered to be made by an ordinance of the city. The written notice may have been necessary to authorize the mayor and chairman to have the improvement made so as to make its cost collectible by the sale of the lot, but the right, and in one sense the duty, of the lot owner to make the improvement himself, and the liability of the lot to be charged with the cost of his failure to do so, attached on the passage of the ordinance ordering the improvement made.

We think it follows from these views that the court committed no error in its charge, or in the refusal of charges asked, of which appellant can complain.

As the verdict and judgment were in favor of the city,

we have not felt called on to inquire whether there was any error in the charge against the city.

The judgment is affirmed.

AFFIRMED.

[Opinion delivered March 18, 1881.]