# The Wabash Eastern Railway Company of Illinois

*v.*

# Commissioners of East Lake Fork Special Drainage District.

*Filed at Springfield November 1, 1890.*

1. Drainage law—*organization of district—how questioned.* On bill to foreclose the lien of special assessments by the commissioners of a drainage district, the defendants can not call in question the regularity of the organization of the district. That can not be questioned collaterally.

2. Same—*admission of organization—what so regarded.* An unqualified admission, by answer and by stipulation, of the due organization of a drainage district under a certain act named, is an admission that all the steps necessary to a legal organization of the district were taken in manner and form as prescribed by the act, including the presentation of the petition, giving the name and post-office address of each of the several land owners, so far as known, and the giving of the requisite actual or constructive notice to all persons having any legal interest in the proceedings.

3. Same—*notice—as to classification of lands, and levy of assessments —of the mode.* Section 60 of the Drainage act of 1885, which prescribes the mode of giving notice of the time and place for hearing objections to the action of the commissioners in classifying lands and levying assessments, only requires notice by publication, and it is immaterial whether copies of such notice are sent to parties interested or not.

4. Same—*admission—that proper notice was given.* The admission that a notice of the time and place for hearing objections to the classification of the lands, and the levy of special assessments for benefits, was duly published, addressed "to whom it may concern," in a weekly newspaper, for two successive weeks, and that a copy thereof was duly mailed, postpaid, to each land owner, will be sufficient to show notice to all persons required by law to be notified.

5. Same—*jurisdiction—by notice.* The jurisdiction of the commissioners to make an assessment is derived by the publication of the notice required by section 60 of the act, and is not dependent upon the voluntary appearance of the parties in interest.

6. Same—*lien for assessments—under act of 1885—constitutionality—nature of the lien.* The Drainage law of 1885, giving a lien for assessments superior to the liens of existing incumbrances, is not unconstitutional, as impairing the obligation of contracts or divesting vested rights. Every one holds his property subject to the exercise of the

taxing power, regardless of the nature of his interest,—whether a fee, an estate in expectancy, an estate for years, or a mere lien.

7. The lien of a special assessment in a drainage district created under section 72 of the Drainage act of 1885, is not upon any special interest in the land, but upon the land itself,—that is, upon the *res.* The lien so given is of the same nature, and subject to the same general rules, as that given in case of general taxes.

8. Special assessments—*referable to the taxing power.* Special assessments are a species of taxation, peculiar in their nature, and subject to special rules, but the power to levy them is referable to the taxing power.

9. Same—*pre-existing claims and liens—held subordinate thereto.* A lien of a special assessment, like the lien for taxes, attaches to the land itself, irrespective of the interests of the various owners, and is paramount to all other claims or liens against the property.

10. Same—*sale of railroad for lien of assessments.* On bill to foreclose the lien of a special assessment upon the right of way and track of a railroad company, the right of way and track may be ordered to be sold for the satisfaction of the assessment.

11. Same—*remedy to question assessment.* The statute having provided an adequate remedy, in case of an erroneous assessment, by appeal, that remedy must be held exclusive, and parties who have neglected to pursue it must be conclusively presumed to be satisfied with the assessment.

Writ of Error to the Circuit Court of Champaign county; the Hon. C. B. Smith, Judge, presiding.

Mr. Thomas J. Smith, and Mr. George B. Burnett, for the plaintiff in error:

The pretended assessment did not become a lien upon the railroad property, because the owners of it were not named in the petition, and because notice was not given to them as provided in the Drainage act. The trustees were the owners. 1 Jones on Mortgages, secs. 709, 710, p. 576; Drainage law, secs. 11, 50; *Barrett* v. *Hinckley,* 124 Ill. 32; *Long* v. *Thompson,* 60 id. 27; *Railroad Co.* v. *Smith,* 78 id. 96.

The decree is erroneous, because it makes the lien of the assessment superior and paramount to the mortgages upon the property executed and recorded before the passage of the act

authorizing the formation of drainage districts. *Cooper* v. *Corbin,* 105 Ill. 224; *Binkert* v. *Railway Co.* 98 id. 205; *Cook* v. *Commissioners,* 101 Ind. 446.

It is not within the constitutional power of the legislature to make the lien of the assessment for drainage purposes superior to the lien of a prior mortgage. The drainage commissioners are private corporations. *Harward* v. *Drainage Co.* 51 Ill. 130; *Hessler* v. *Drainage Comrs.* 53 id. 105.

Special assessments are not included within the meaning of the word "taxation." *Railroad Co.* v. *Decatur,* 126 Ill. 92; *McLean County* v. *Bloomington,* 106 id. 209; *Edward* v. *Kearzy,* 96 U. S. 595; *Green* v. *Biddle,* 1 Wheat. 1; *Planters' Bank* v. *Sharp,* 6 How. 301; *Billings* v. *Riggs,* 56 Ill. 483.

The decree is erroneous because it directs the sale and conveyance of a portion of the railroad. *Dun* v. *Railroad Co.* 24 Mo. 493; *Railroad Co.* v. *Parker,* 9 Ga. 377; *Cox* v. *Railroad Co.* 46 Cal. 18; *Knapp* v. *Railroad Co.* 74 Mo. 374; Rorer on Judicial Sales, sec. 1070.

The decree is erroneous because the assessment is in excess of the benefits to the railroad property. *People* v. *Meyers,* 124 Ill. 95; *Lipes* v. *Hand,* 104 Ind. 503.

Mr. Francis M. Wright, for the defendants in error:

The remedy against an erroneous assessment is by appeal alone. *Keigwin* v. *Drainage Comrs.* 115 Ill. 347; *Town of Colfax* v. *Commissioners,* 127 id. 581.

The owner of the equity of redemption is the owner of the land. *Ralston* v. *Hughes,* 13 Ill. 470.

The receiver is a trustee, and acts for all the creditors. He represents the corporation and its creditors. *Holich* v. *Folger,* 20 Wall. 1; *Express Co.* v. *Railroad Co.* 9 Otto, 191; *Davis* v. *Gray,* 16 Wall. 203; *Daggett* v. *Railroad Co.* 9 Otto, 72; *Gillett* v. *Moody,* 3 N. Y. 479; *Talmadge* v. *Pell,* 7 id. 347; *Libby* v. *Rosekrans,* 55 Barb. 217.

Jurisdiction to act is obtained when the notice required by the statute is given, (*Commissioners* v. *Drainage Comrs.* 127 Ill. 581,) and when once obtained, no other notice is necessary as to any further steps.    *People* v. *Chapman*, 127 Ill. 387; *Blake* v. *People*, 109 id. 504.

By the admissions it appears the special assessments were made in strict conformity with the statute, which appears on the face of the proceedings, and are therefore valid.    *Chicago* v. *Wright*, 32 Ill. 192; *Chicago* v. *Railroad Co.* 20 id. 286.

A sale of land for taxes will pass the title regardless of any incumbrance.    *Cooper* v. *Corbin*, 105 Ill. 224.

The lien for a special assessment continues until paid. *Brackett* v. *People*, 115 Ill. 29.

A lien for taxes does not stand upon the footing of an ordinary incumbrance, and is not displaced by a sale under a pre-existing judgment or decree, unless otherwise directed by statute.    It attaches to the *res*, without regard to individual ownership.    *Osterberg* v. *Trust Co.* 3 Otto, 424.

A proceeding *in rem* is directly against the property, and has for its object the disposition of the property, without reference to the title of the individual.    *Pennoyer* v. *Neff*, 95 U. S. 714.

The jurisdiction is founded on the presence of the property, and is conclusive against the absent as well as the present contestant.    *Parker* v. *Overman*, 18 How. 137; *Thomas* v. *Lawson*, 21 id. 331.

Possession of the *res* in the sovereign gives jurisdiction. *Hudson* v. *Guestier*, 4 Cranch, 293.

Whenever, by the laws of a State, or by State authority, a tax, assessment, servitude or other burden is imposed upon property for the public use, whether it be for the whole State or some more limited portion of the community, and those laws provide for a mode of confirming or contesting the charge thus imposed, in the ordinary courts of justice, with such notice to the person or such proceeding in regard to the prop-

erty as is appropriate to the nature of the case, the judgment in such proceedings can not be said to deprive the owner of his property without due process of law, however obnoxious it may be to other objections. *Davidson* v. *New Orleans,* 96 U. S. 97; *Hogan* v. *Reclamation District No. 108,* 111 id. 701;. *Owners of Lands* v. *People,* 113 Ill. 314.

A law of a State having made water rents a charge on lands, with a lien prior to all other incumbrances, in the same manner as taxes and assessments, a mortgage on the land is subject to this condition and charge, whether the water was introduced on to the lot mortgaged, before or after the giving of the mortgage. *Provident Institution* v. *Mayor,* 113 U. S. 506.

Organization can be questioned only by *quo warranto. Blake* v. *People,* 109 Ill. 504; *Evans* v. *Lewis,* 121 id. 478.

The point made by counsel for plaintiff in error, that the decree is erroneous because it directs the sale and conveyance of a portion of the railroad, is met by the opinion of this court in *Illinois Central Railroad Co.* v. *Commissioners, etc.* 129 Ill. 417.

Mr. Justice Bailey delivered the opinion of the Court:

This was a bill in chancery, brought under the provisions of section 72 of the "Act to provide for drainage for agricultural and sanitary purposes and to repeal certain acts therein named," approved June 27, 1885, by the Commissioners of the East Lake Fork Special Drainage District against the Wabash, St. Louis and Pacific Railway Company and the Wabash Eastern Railway Company of Illinois, to foreclose the lien of a certain assessment for drainage purposes, upon that portion of what has heretofore been known as the Wabash, St. Louis and Pacific Railroad which lies within said district. The defendants appeared and answered, and a hearing being afterwards had on pleadings and proofs, a decree was rendered establishing said lien and awarding a sale of that portion of said railroad lying within said district for the payment of the

same.    The Wabash Eastern Railway Company of Illinois now brings the record to this court by writ of error and assigns various errors.

The facts, most of which are admitted by the pleadings or by the stipulation of the parties, are substantially as follows:  The East Lake Fork Special Drainage District was duly organized under the provisions of the above mentioned act on the 9th day of August, 1886, embracing lands in three different towns in Champaign county.    The main line of said railroad, which was built many years ago, runs through a portion of said district.    On the 27th day of January, 1887, the commissioners, in classifying the several tracts of land in said district according to the benefits to be received from the contemplated drainage, determined that said line of railroad would receive one-eighth of said benefits, and made their classification accordingly, and filed the same in the office of the clerk of the County Court.    Said commissioners thereupon appointed a meeting for hearing objections to said classification for the 14th day of February, 1887, and a notice, addressed "To whom it may concern," and stating the time, place and object of said meeting, was published by said clerk in a newspaper published in said county, and also mailed to each land owner, to the Wabash, St. Louis and Pacific Railway Company, and to Gen. John McNulta, the receiver of said railway company.    At said meeting, said railway company, by its agent, and said receiver, by his agent, appeared and objected to said classification, and said commissioners, having heard and considered said objections, as well as all other objections presented, and being of the opinion that the classification of said railroad was too high, changed the same from one-eighth to one-sixteenth, and confirmed the classification as thus amended.    No further steps were taken by said railway company or by said receiver, by appeal or otherwise, to have the final determination of said commissioners reviewed or modified.

After said classification was confirmed, said commissioners ordered the sum of $35,000 to be raised by special assessment upon the lands within the district to be benefited by the proposed drainage system, and said assessment being extended upon said lands upon the basis of said classification, the sum of $2187 was assessed against that portion of said railroad within said district, and said assessment was afterward duly confirmed. Said district was also divided into sub-districts for the construction of lateral drains, and in one of said sub-districts the sum of $18.20 and in another $58 was assessed upon said railroad. These assessments were also confirmed, and no steps were taken by said railway company or by said receiver by appeal or otherwise to have said orders of confirmation reviewed. Said assessments were returned to the county collector delinquent March 10, 1888, and said collector, after giving due notice, applied to and obtained from said County Court, at its May term, 1888, a judgment against said railway for the amount of said special assessments. Said assessments remaining wholly unpaid, said commissioners, on the 21st day of June, 1889, filed this bill.

It is admitted that long prior to the passage of said Drainage Law, the entire line of railroad then owned by the Wabash, St. Louis and Pacific Railway Company, including that portion lying within said district, was incumbered by four deeds of trust, all of which were duly recorded in the office of the recorder of said county. Said incumbrances were all executed by said railway company, and were as follows: one bearing date May 1, 1863, to the Farmers' Loan and Trust Company of New York as trustee, to secure $2,496,000; one bearing date May 2, 1865, to Solon Humphreys and James R. Jessup as trustees, to secure $2,500,000; the third executed in February, 1867, to Isaac H. Knox and James R. Jessup as trustees, to secure $2,610,000; and the fourth executed in May, 1879, to Solon Humphreys and D. A. Linsley as trustees, to secure $2,000,000. In December, 1886, proceedings were

instituted in the Circuit Court of the United States for the Northern District of Illinois to foreclose each of said deeds of trust, and by virtue of decrees of foreclosure therein, the property covered by said deeds of trust was sold May 15, 1889, and at said sale certain parties became the purchasers, who subsequently conveyed said property to the Wabash Eastern Railway Company of Illinois, the plaintiff in error.

It being insisted that the proceedings by virtue of which said district was organized, the lands therein classified and said assessment levied, were insufficient to make the assessment a lien on the railroad as against the plaintiff in error and the parties through whom it derives title, it is important to notice the precise nature and scope of the admissions in that behalf made by the plaintiff in error in its answer, and in the stipulation as to the facts, entered into by its counsel at the hearing. The bill having alleged the facts substantially as above set forth, the plaintiff in error answered, among other things, that it believed it to be true "that the East Lake Fork Drainage District was duly organized by proceedings in the County Court of Champaign county, Illinois, on the 9th day of August, 1886, under the provisions of an act of the General Assembly of the State of Illinois, entitled: 'An Act to provide for drainage for agricultural and sanitary purposes, and to repeal certain acts therein named,' approved June 27, 1885." Then, after admitting that the commissioners classified the lands in the district so as to impose one-eighth of the burdens upon the railroad, it answers that it believes it to be true "that said commissioners fixed the time for hearing objections to the assessment made by them for the construction of said ditch on the 14th day of February, 1887, and gave notice as required by law, and that said commissioners met at the time aforesaid to hear objections to said assessment," etc. The stipulation as to the facts entered into at the hearing is as follows:

"It is admitted that the East Lake Fork Special Drainage District, of the county of Champaign, State of Illinois, was duly organized, by proceedings in the county court of Champaign county, Illinois, on the 9th day of August, 1886, under the provisions of an act of the General Assembly of the State of Illinois, entitled 'An Act to provide for drainage for agricultural and sanitary purposes, and to repeal certain acts therein named,' approved June 27, 1885; that said drainage district embraces lands in the towns of Scott, Colfax and Sadorus, in said Champaign county; that the Wabash, St. Louis and Pacific railway, known as the main line, runs through that portion of said drainage district located in the town of Sadorus, in said county, the drains of which railway connect with the drains of said district; that on the 27th day of January, 1887, the commissioners of said district, being of the opinion that in the construction of the work in said drainage district the railroad of the said Wabash, St. Louis and Pacific railway would be benefited where the main line passes through said district, did assess to such railroad such sum as they deemed just and equitable for such railroad to pay in proportion to the benefits received by reason of the construction of the main ditch in said drainage district, which sum was determined by estimating the amount of benefits to the entire district, including the benefits to such railroad, and also the benefits to such railroad, thereby producing the fractional figure of one-eighth, expressing the ratio between the sum of the benefits for the whole district and the sum found to be the benefit to said railroad, which said fractional figure of one-eighth the said commissioners then believed did express the proportionate part of the corporate taxes of the district to be paid by said railroad, which said figure was duly entered upon the table of classification of said district against the said Wabash, St. Louis and Pacific Railway Company, and said table duly filed in the office of the county clerk of said Champaign county, as required by law, on the 27th day of January,

1887; and the said commissioners having fixed the time for hearing objections to said classification on the 14th day of February, 1887, at ten o'clock A. M., at the town hall in the village of Ivesdale, in the said county, the said clerk did thereupon, on the 27th day of January, 1887, issue notices of the said time and place of said meeting, and the object thereof, addressed 'To whom it may concern,'—which said notice was duly published in the '*Champaign Times,*' a weekly newspaper printed and published in said county, for two successive weeks, the first publication being more than fifteen days prior to said 14th day of February, 1887, and a copy of said notice was by said clerk duly mailed, postpaid, to each land owner and said railroad company, at his, her or its post office address, and to Gen. John McNulta, receiver of said railway company, at Chicago; and the said commissioners did meet at the time and place aforesaid, to hear objections to said classification, and by public announcement then and there made, did adjourn to February 15, 1887, at nine o'clock A. M., to the same place, when and where they met and completed their hearing of objections, and that the drainage record shows that at said meeting the agent of the receiver appeared and objected to said classification of said railroad, and also, so far as by law the agent of the receiver could bind the Wabash, St. Louis and Pacific Railway Company, he appeared and objected for said company, and the commissioners heard and considered said objection and all other objections, and did make such corrections and changes of said classification as in their judgment justice required; and being satisfied in certain cases, and in the case of said railway company, that injustice had been done by their said classification, did correct the same in accordance with the rights and justice of the matter, and did change the said figure of classification against said railway company from one-eighth to one-sixteenth, and duly noted such change on said table of classification, and did then confirm said classification as corrected, and on the 18th day of

February, 1887, did file with the county clerk of said county their order confirming said classification as corrected,—which said order and the said classification were duly recorded in the drainage record in the office of said clerk, from which the said railroad company, or the receiver, took no appeal; that thereupon the said drainage commissioners did order the sum of $35,000 to be raised by special assessment upon the property benefited by the proposed work in said district, and filed with the said clerk their certificate thereof, as required by law, which was duly recorded in the drainage record; and thereupon the said clerk did compute and apportion the various amounts to and among the several owners, as required by law, and the commissioners aforesaid did make out a tax list, signed by them, and filed on the 2d day of March, 1887, in said clerk's office, in which, among others assessed, the railroad of said Wabash, St. Louis and Pacific Railway Company is assessed for benefit in said district, on the basis of said fractional figure of said one-sixteenth and the said levy of said $35,000, in the sum of $2187,—which said tax list was duly confirmed, and from which no appeal was taken by said railroad company or said receiver, and the same was duly recorded in said drainage record; that said drainage commissioners, having divided said district into sub-districts for the purpose of constructing lateral drains therein, did, by like proceedings as hereinbefore described for the whole district, assess the railroad of said railway company for benefits, in sub-district No. 22 the sum of $18.20, and in sub-district No. 25 the sum of $58; that on the 10th day of March, 1888, the treasurer of said district returned the said assessment to the county collector of said county as delinquent, who, after due notice to the said railway company, did, at the May term of the county court of said county, 1888, apply for and obtain judgment as in cases of delinquent land; that the assessments were ordered paid, as the statute requires, but are not paid; that the track and right of way of said railway company in said district runs

through sections 3, 4, 7, 8 and 9, town 17, range 7, in said county, within said district; that said district contains 17,500 acres."

The first contention of counsel is, that said assessment did not become a lien upon the railroad property because, as it is claimed, the owners of it were not named in the petition for the organization of the district, and were not notified of the proceedings thereunder. Their position is, that at the time of the organization of the district and of the levying of the assessment, the trustees in the deeds of trust and not the railway company were the real owners of the railroad, and that said trustees were not named in the petition or notified of the proceedings. It may be here remarked that, so far as counsel seek, in this collateral proceeding, to call in question the regularity of the organization of the district, their effort must prove unavailing. But even waiving that point, we are of the opinion that, in view of the facts established by the present record, their contention can not be sustained.

It is undoubtedly the rule in this State that for many and perhaps for most purposes, a mortgagee, especially after condition broken, is the owner of the fee. *Barrett* v. *Hinckley,* 124 Ill. 32. But whether he is to be deemed the "land-owner" within the meaning of the Drainage Law does not seem to be important in this case, since, in view of the admissions by which the plaintiff in error is bound, the contention now under consideration must be overruled, whichever way that question may be decided.

By glancing for a moment at the Drainage Act it will be seen, that the steps prescribed for the organization of a special drainage district are, in brief, as follows: There must be presented to the County Court a petition, signed by a certain proportion of the adult land-owners, stating that the lands lying within the boundaries of the proposed district require a combined system of drainage or protection from wash or overflow; that the petitioners desire that a drainage district

be organized embracing the lands therein mentioned, for the
purpose of constructing, repairing or maintaining a drain or
drains, etc., within such district for agricultural and sanitary
purposes, by special assessment upon the property benefited,
and also giving the names of the owners of the several tracts
of land, together with their post-office address, so far as known.
The clerk of said court is then required to give at least twenty
days' notice of the day in the term when the petition and all
parties interested will be heard, by posting such notice in at
least five public places in each township in which the proposed
district or any part of it shall lie, and by publishing such no-
tice for three weeks in a newspaper published in the county,
and also by mailing at least ten days before the hearing, a
copy of the notice to each person owning land of the district
whose name, post-office address or place of residence is given
and whose name does not appear signed to the petition. At
the time set for the hearing, the court is required to examine
the petition, and if it appear that it is signed and that notice
has been given as required by the act, to so find. Opportu-
nity is also given to any person owning land in the district
and whose name is not signed to the petition to appear and
controvert any material statement therein contained. If at
such hearing the finding of the court is in favor of the peti-
tioners, it becomes the duty of the court to appoint three com-
missioners who are required to go upon the land included in
the proposed district and personally examine the same, em-
ploying an engineer and obtaining maps, plats, surveys and
estimates if they see fit, and reporting the same to the court,
with such recommendations as they see fit to make. The
court is then required to fix a time for hearing their report,
and upon such hearing, any owner of land within the district
may appear in person or by attorney and be heard upon any
and all questions touching such report and the organization
of the district, and if it appears to the court that the lands
included in the proposed district will be benefited for agricul-

tural or sanitary purposes, it must so find, and enter an order declaring the district organized.

The record before us does not contain a copy of the petition for the organization of the district in question, nor does it show specifically whose names were signed to it, or who were named therein as land owners. Nor does it specifically show what proceedings were taken thereunder by way of organizing the district, or what notice was given or to whom. In the place of specific proof on these subjects, the bill alleges the due organization of the district under and in pursuance of the provisions of the Drainage Act, and that allegation is fully and unequivocally admitted by the plaintiff in error, both in its answer and in the stipulation made at the hearing by its counsel. An unqualified admission of the due organization of the district under and in pursuance of said act is an admission that all the steps necessary to a legal organization of the district were taken in manner and form as prescribed by said act, including the presentation of a petition giving the name and post-office address of each of the several land-owners, so far as known, and the giving, in the mode therein prescribed, of actual or constructive notice to all parties having any legal interest in the proceedings. If then the trustees in the deeds of trust were the legal owners of the railroad at the time the petition was presented, as counsel insist, it must be assumed, in view of said admissions, that they were named in the petition as land-owners, or that their names and post-office address were not known, and that the notice, either actual or constructive, required by said act, was given them.

Substantially the same thing may be said in relation to the proceedings taken by the commissioners subsequent to the due organization of the district, by way of classifying the lands within the district and of levying the assessment now under consideration. The admission in the stipulation is, that a time was fixed by the commissioners for hearing objections to said classification, and that a notice, addressed "To whom it

may concern," stating the time, place and object of said meeting, was duly published in a weekly newspaper published in Champaign county for two successive weeks, the first publication being more than fifteen days prior to the day fixed for said hearing, and that a copy of said notice was duly mailed, postpaid, to each land-owner and said railway company at his, her or its post-office address, and also to Gen. John McNulta, the receiver of said railway company, at Chicago. It may be observed that the sixtieth section of the Drainage Act which prescribes the mode of giving notice in the matter we are now considering, only requires notice by publication, and it is therefore quite immaterial whether a copy of the notice was mailed to the trustees in the trust deeds or not. But even if that were required, the admission is that a copy of the notice was mailed to each land-owner, and if said trustees are to be deemed the owners of the railroad, the admission applies to them the same as to the other land-owners.

In view of what we have said, it does not seem important to determine whether the appearance of the agent of the receiver and of the railway company at the meeting and his objecting to the classification could affect the rights of the trustees, or of the plaintiff in error who has succeeded to their rights. The jurisdiction of the commissioners to make an assessment which should be binding upon the interests represented by the trustees was based upon the notice, either actual or constructive, the due service of which is admitted, and not upon the voluntary appearance of an agent representing the mortgagor or the receiver. The action of the commissioners would, under the facts admitted, have been equally valid, if there had been no appearance and no objections interposed.

The next proposition submitted by counsel for the plaintiff in error is, that the deeds of trust having been executed and recorded long prior to the assessment or to the passage even of the act by which the assessment was authorized, they constitute a lien superior to that of the assessment, and that the

decree therefore is erroneous in declaring the lien of the assessment superior and paramount to that of the deeds of trust.

Section 72 of the Drainage Act provides that all assessments or levies thereafter made under the provisions of said act "shall be taken, held and considered a lien upon each and every tract of land or property assessed in such district, to the extent and amount of the proportionate share assessed or levied against the same." The lien thus created is not upon any specific interest in the land but upon the land itself, that is, upon the *res*. Special assessments are a species of taxation, peculiar in their nature it is true and subject to special rules. But the power to levy them is clearly referable to the taxing power. As said by Judge Cooley in his Treatise on Taxation, "That these assessments are an exercise of the taxing power has over and over again been affirmed, until the controversy must be regarded as closed." Cooley on Taxation, 623, and authorities cited in note. It follows that the lien given by the statute in case of such assessments is of the same nature and subject to the same general rules as that given in case of general taxes.

A lien of this character attaches to the land itself, irrespective of the interests of the various owners, and is paramount to all other claims or liens against the property. In *Ostenberg* v. *Union Trust Co.* 93 U. S. 424, which was a case involving a lien on land given by the revenue laws of this State, the court, in discussing the nature and extent of such lien, say: "It is true that the title of a purchaser at a judicial sale under a decree of foreclosure takes effect by relation to the date of the mortgage, and defeats any subsequent lien or incumbrance. A lien for taxes does not, however, stand upon the footing of an ordinary incumbrance, and is not displaced by a sale under a pre-existing judgment or decree, unless otherwise directed by statute. It attaches to the *res* without regard to individual ownership, and when it is enforced by sale pursuant to the statute, prescribing the mode of assessing

and collecting the same, the purchaser takes a valid and un-impeachable title." So, in *Cooper* v. *Corbin*, 105 Ill. 224, this court said: "Taxes levied upon real estate become a charge upon the land itself, and if they are not paid, the land may be sold for the taxes due thereon, and the title will pass re-gardless of any incumbrance resting on the land." Again, in *Jack* v. *Weiennett*, 115 Ill. 105, we said: "The claim for the payment of taxes upon the citizen is, therefore, of necessity, paramount to all other claims against the property." In the light of these authorities, and upon principle as well, it must be held that the lien of the assessment in this case is superior to that of the deeds of trust, and that the Circuit Court was correct in so holding.

It is urged that the Drainage Law, so far as it attempts to give a lien for assessments superior to the liens of existing incumbrances, is unconstitutional because it violates the obli-gation of contracts or divests vested rights. This clearly can not be so. Every property-owner holds his property subject to the exercise of the taxing power, and it is immaterial, so far as this question is concerned, what may be the nature of his interest, whether the fee, an estate in expectancy, an estate for years or a mere lien. This is true, as every one must ad-mit, in relation to general taxes, where the only return to the tax-payer is the protection and security which the government gives him, and *a fortiori* should it be true in case of special assessments where, in theory at least, he receives an adequate and complete return for the money assessed in the enhanced value of the estate or property which he owns or to which his lien attaches.

Again, it is urged that the decree is erroneous in directing a sale of a portion of the railroad for the satisfaction of the lien. This proposition was presented and considered in *I. C. R. R. Co.* v. *Commissioners of East Lake Fork Special Drainage District*, 129 Ill. 417, and it was there held that an order for the sale of the track and right of way of the railroad company

within the district for the payment of the assessment was proper. We are still inclined to adhere to the conclusion to which we arrived in that case.

The last point raised is, that the assessment upon the railroad property is largely in excess of the benefits to said property arising from the proposed system, and that the decree sustaining the assessment is erroneous for that reason. A large amount of testimony was offered at the hearing as to the nature and amount of the benefits to the railroad, and the court was asked to consider that question as though it were an original question to be determined in this proceeding. The statute having provided an adequate remedy in case of an erroneous assessment by appeal, that remedy must be held to be exclusive, and parties who have neglected to pursue it must be conclusively presumed to be content with the assessment.

We are of the opinion that the decree is warranted by the evidence, and that there is no material error in the record. The decree therefore will be affirmed.

*Decree affirmed.*