**MARRIOTT v. CORDER et al.** (No. 11888.)

Court of Civil Appeals of Texas. Fort Worth. Dec. 10, 1927.

Rehearing Denied Feb. 4, 1928.

1. **Constitutional Law ⬯300—Ordinance making paving lien superior to vendor's lien acquired before acceptance of city charter held not to take property without due process of law (Const. U. S. Amend. 14; Wichita Falls City Charter, §§ 108–116; 112, 113).**

Under Wichita Falls/City Charter, §§ 108–110, 112, 113, relating to paving and liens therefor, city making lien for paving superior to vendor's lien acquired prior to acceptance of city charter and enactment of ordinances *held* not to take property without due process of law, contrary to Const. U. S. Amend. 14.

2. **Liens ⬯12—Ordinary statutory lien is generally subordinate to prior contractual or other lien.**

Generally an ordinary statutory lien is subordinate to a prior contractual or other lien.

On Motion for Rehearing

3. **Vendor and purchaser ⬯285(3)—In suit on notes and to foreclose vendor's lien, pleadings held to authorize foreclosure of prior lien for paving (Wichita Falls City Charter, §§ 108–110, 112, 113; Rev. St. 1925, art. 1096)..**

In suit on notes and to foreclose vendor's lien securing them, amended answer of some defendants, setting up cross-action for foreclosure of paving lien under Wichita Falls City Charter, §§ 108–110, 112, 113, alleging their certificate was superior lien on property described and that other parties were estopped from denying its validity under Rev. St. 1925, art. 1096, *held* to sufficiently disclose cross-action and to authorize foreclosing paving lien, against contention that such answer was addressed for relief against original owner of property only.

Appeal from District Court, Wichita County; W. W. Cook, Judge.

Suit on notes and to foreclose a vendor's lien by E. W. Marriott against Ernest W. Corder and others, doing business as Whitham & Co., and others, in which L. E. Whitham and R. M. Whitham filed a cross-action setting up a paving lien. From a judgment foreclosing the paving lien of L. E. Whitham and R. M. Whitham and making it superior to the vendor's lien securing plaintiff's notes, plaintiff appeals. Affirmed.

W. J. Townsend, of Wichita Falls, for appellant.

Milburn E. Nutt, of Wichita Falls, for appellees.

CONNER, C. J. E. W. Marriott, appellant, instituted this suit against Ernest W. Corder, J. R. Monroe, L. E. Whitham, and R. M. Whitham, doing business as Whitham & Co., and others not necessary to name, in the district court of Wichita county, in the usual form of trespass to try title for lot 4 of the J. Caruthers subdivision of block 26 of the original L. Jalonic addition to the city of Wichita Falls.

In a second count, the plaintiff pleaded, in the alternative, that he was the holder and owner of four certain unpaid vendor's lien notes, dated September 13, 1919, executed by Ernest W. Corder in favor of J. Caruthers in the sum of $700 each, bearing interest from date until paid at the rate of 8 per cent. per annum, and due and payable in 2, 3, and 4 years from date, stipulating the usual 10 per cent. attorneys' fees, and retaining a vendor's lien on the lot and premises mentioned to secure the payment thereof.

It was alleged that J. Caruthers and wife, Sigrid Caruthers, for a valuable consideration, on September 30, 1919, by an instrument in writing, duly assigned to the plaintiff, E. W. Marriott, the above-described notes and vendor's lien. There were other allegations relating to defendants not named which will not be noticed, inasmuch as they are making no complaint of the judgment below.

L. E. Whitham and R. M. Whitham answered, so far as necessary to notice, that, by virtue of the laws of the state of Texas and ordinances of the city of Wichita Falls, they had paved the street in front of the lot in controversy under contract, for which the city of Wichita Falls, on October 20, 1924, issued a certain paving lien assessment in favor of said defendants against said property, bearing interest from date until paid at the rate of 8 per cent. per annum, together with reasonable attorneys' fees, in the amount of the alleged paving lien, to wit, $712.87. Said defendants alleged that said paving lien was a binding first and superior lien upon the property above described, and that plaintiff's vendor's lien, of date September 13, 1919, was inferior thereto.

The case was tried before the court, which, upon the undisputed testimony, entered judgment in favor of plaintiff, Marriott, for the

title and possession of the land sued for against all defendants, but in favor of L. E. and R. M. Whitham, paving contractors, for a first lien against the property in question for the cost of paving, interest, and attorneys' fees thereon, amounting to the sum of $712.87, canceling the plaintiff's vendor's lien notes which had been given for a part of the purchase money of said property, and declaring that they constituted a second and inferior lien to that held by the Whithams, to whom the court gave a foreclosure of their lien as against the property. From the judgment so entered, the plaintiff excepted, and has duly prosecuted an appeal to this court.

Appellant presents some nineteen propositions upon which a reversal of the judgment is sought. Appellees object to propositions 8, 10, 11, 12, 14, 15, 16, 17, and 18 as violative of rules 30 and 31, prescribed for the government of Courts of Civil Appeals, in that they present propositions of law only. We will quote the first proposition as illustrative of the others, which are of the same general character, to wit:

"Where a lien to secure the purchase money of real estate sold is expressly reserved in the deed of conveyance thereof, the superior legal title remains with the vendor or his assignee, who can be divested of said title only by the payment of the purchase-money notes by the original vendee or his assigns."

Under the rules referred to, we incline to the view that the objections to the proposition are well taken. See Davis, Agent, v. Morris (Tex. Civ. App.) 257 S. W. 328; Hunt v. Evans (Tex. Civ. App.) 233 S. W. 854; Richmond v. Hog Creek Oil Co. (Tex. Civ. App.) 229 S. W. 563; Reisenberg v. Hankins (Tex. Civ. App.) 258 S. W. 904; Georgia Casualty Co. v. Ginn (Tex. Civ. App.) 272 S. W. 601.

[1] We, however, do not feel that it is necessary to discuss or determine the sufficiency of the propositions objected to, for the reason that we think propositions 9, 13, and 19, to which no objection has been leveled, substantially present the questions, informally presented in other propositions, upon which appellant relies for a reversal. These are to the effect that the judgment of the lower court is erroneous, for the reason that appellant, for a valuable consideration, secured his vendor's lien notes and the legal title retained in the grantor to secure the same on September 13, 1919, prior to the adoption by the city of Wichita Falls of its charter and state paving law, which was on March 31, 1920, and prior to the enactment of the ordinances under the charter authorizing the paving done by the appellees, these ordinances being adopted on April 12, 1920; and hence that the charter and paving law has been given retroactive effect and deprived plaintiff of his property without due course of law, contrary to the familiar provisions of

the state and federal Constitutions relating to those subjects.

It will be unnecessary, we think, to set out the various articles of the city charter of Wichita Falls which define its powers, inasmuch as in a proper case the power of the city to order the pavement in question is not disputed; nor is any question raised as to the regularity of the action of the board of aldermen in determining the advisability of making the improvement, or of the regularity in the enactment of the ordinances ordering the improvement according to specifications given after due notice thereof had been published as required by the charter; nor is any question made of the extent of the benefits conferred upon the property involved in this controversy, or of the fact that the certificate of the city issued to and held by appellees was in due form and duly assigned to them. In short, the only questions presented in the brief of appellant are those indicated above. We are thus relieved of much detail in our statement and disposition, for which we feel that counsel representing the parties are to be commended.

[2] We will therefore address ourselves to the question of whether the fact, which is admitted, that appellant acquired the vendor's lien notes and legal title, as asserted, prior to the acceptance of the city of its charter, and prior to the enactment of the ordinances and construction of the improvement in question, entitled him to a judgment free of the lien of appellees. An ordinary statutory lien, such as those involved in the cases cited in behalf of appellant, is held subordinate to a prior contractual or other lien. But in the case before us we have a lien based on the theory of benefits conferred upon the property involved and authorized by statutes which in express terms provide that the assessment lien shall be a first and superior lien to all others. As to such liens, it is said, in Page & Jones on Taxation by Assessment, vol. 2, § 1068, that:

"The provisions of the statute determine the question of the priority between the lien of an assessment and other liens upon realty, if both are created after the enactment of such statute. * * * If it is so provided by statute, the lien of an assessment may have priority over a lien which is earlier in point of time, such as a mortgage lien."

Numerous cases are cited in the notes as supporting the text quoted. Among them is the case of Provident Institution for Savings v. Mayor & Aldermen of Jersey City, by the Supreme Court, 113 U. S. 506, 5 S. Ct. 612, 28 L. Ed. 1102. That was a case in which the institution sought to foreclose certain mortgages given to it on a certain lot in Jersey City, and the mayor and aldermen of the city were made parties on allegations that the city was claiming a prior lien on the premises for certain water rents. It was

shown that, at the time the Institution acquired its mortgages, no water rent had accrued, and the Institution urged that to give the after-acquired lien for the water rents as claimed by the city violated that portion of the Fourteenth Amendment to the Constitution of the United States, which declares that no state shall deprive any person of life, liberty, or property without due process of law. The court held that the city's lien for the water rent was superior to the mortgage liens of the Institution, on the ground that the statutes of the state which authorized the lien for water rents, giving it priority over other liens, having been in existence at and before the creation of the mortgage liens, the Institution took its mortgage subject to the law, and that hence the city's lien was superior to that of the Institution and not in violation of the constitutional provision invoked.

Of course the case just referred to is distinguishable from the case we have before us, in that here the charter giving the improvement lien priority was not in force at the time appellant acquired his vendor's liens and title, but in the above decision of the Supreme Court, after ruling as stated, it was further said:

"In what we have now said in relation to the anterior existence of the law of 1852 as a ground on which this case may be resolved, we do not mean to be understood as holding that the law would not also be valid as against mortgages created prior to its passage. Even if the water rents in question cannot be regarded as taxes, nor as special assessments for benefits arising from a public improvement, it is still by no means clear that the giving to them a priority of lien over all other incumbrances upon the property served with the water would be repugnant to the Constitution of the United States. The law which gives to the last maritime liens priority over earlier liens in point of time is based on principles of acknowledged justice. That which is given for the preservation or betterment of the common pledge is in natural equity fairly entitled to the first rank in the tableau of claims. Mechanics' lien laws stand on the same basis of natural justice. We are not prepared to say that a legislative act giving preference to such liens even over those already created by mortgage, judgment, or attachment, would be repugnant to the Constitution of the United States. Nor are we prepared to say that an act giving preference to municipal water rents over such liens would be obnoxious to that charge. The providing a sufficient water supply for the inhabitants of a great and growing city is one of the highest functions of municipal government, and tends greatly to enhance the value of all real estate in its limits; and the charges for the use of the water may well be entitled to take high rank among outstanding claims against the property so benefited. It may be difficult to show any substantial distinction in this regard between such a charge and that of a tax strictly so called. But, as the present case does not call for an opinion on this point, it is properly reserved for consideration when it necessarily arises."

While the pronouncement just quoted is, as to the case here, doubtless dicta, it is at least persuasive, and in principle applied by our own Supreme Court in the case of Storrie v. Street Ry. Co., 92 Tex. 129, 46 S. W. 796, 44 L. R. A. 716. In that case certain mortgage liens were pleaded as superior to a street improvement lien authorized by a law passed subsequent to the date of the mortgages which gave the improvement lien priority. It was claimed by the railroad company that the statute was unconstitutional in so far as it added to the liability of the railroad over and above what was authorized by the law at the time its mortgage was executed. In disposing of the question, our Supreme Court said:

"Article 1, § 17, of the Constitution of the state, contains this provision: 'No irrevocable or uncontrollable grant of special privileges or immunities shall be made, but all privileges and franchises granted by the Legislature or created under its authority shall be subject to the control thereof.' This provision of the Constitution was in force at the time the street railway company acquired its right in the streets of Houston and before the mortgage of the trust company was executed. The rights of both the street railway company and the mortgage company were acquired subject to the control of the Legislature upon this question. The Legislature had the right to enact the law of 1891 amending the charter of Houston, by which the liability of the street car company for the cost of paving the street was enlarged; that act does not violate the Constitution of this state nor of the United States. Railway v. Sioux City, 138 U. S. 98 [11 S. Ct. 226] 34 L. Ed. 899; Street Railway v. Sioux City, 78 Iowa, 367 [43 N. W. 224]; Railway v. Commissioners [134 Ill. 384, 25 N. E. 781] 10 L. R. A. 285; 2 Elliott on Railroads, § 789.

"Mr. Elliott, in his work on Railroads, section above cited, speaking of the liens of such assessments, says: 'These liens are purely statutory, and their existence, force, and extent depend upon the terms of the statute creating them. Such liens are ordinarily superior to all liens except general taxes, and the authority of the Legislature to make them such is firmly established. The assessments being made on the theory that the property is benefited and enhanced in value in a sum equal to the amount of the assessment, no injury can result to other lienholders, such as mortgagees, mechanic lien holders, and the like.'"

Section 108 of the city charter of Wichita Falls, relating to local improvements, requires a resolution of the board of aldermen declaring the necessity for the improvement. Section 109 requires notice to be given by publication of the intention to improve. Section 110 gives the owner of property the right to present his claim for damages, etc. Section 112 confers the power to provide how the cost of any such improvement shall be paid, and section 113, among other things, provides

that the board of aldermen may provide by ordinance for the time and terms of payment of such assessment and the rate of interest payable on deferred payments thereof, and that—

"Any such ordinance may also fix a lien upon the property and declare the assessments to be a personal liability of the owners of such abutting property, and the board of aldermen may cause assignable certificates to be issued in the name of the city declaring the liability of such owners and their property for the payment of such assessments and fixing the terms and conditions of such liability and payment. * * * Such assessments shall be secured by and constitute a lien on said property, which shall be the first enforceable claim upon the property against which it is assessed, superior to all liens and claims except for state, county and municipal taxes."

We conclude that under the ordinances and the authorities there can be little doubt, if any, that the city by ordinance had the power to make the assessment lien prior to that of appellant in this case. Indeed, the question of a priority of liens, which is principally presented, would seem not to be in the case at all. It is said in Page and Jones on Taxation, vol. 2, § 1053, that:

"In the absence of statutory provisions restricting the lien of the assessment to some particular estate in the land, it is generally held that the lien of an assessment is a burden upon the land thereof"—citing the cases of Wabash Ry. Co. v. Commissioners of East Lake Fork Special Drainage District, 134 Ill. 384, 25 N. E. 781, 10 L. R. A. 285; Highland v. City of Galveston, 54 Tex. 527.

In Highland v. City of Galveston, supra, in speaking of improvement, the court said:

"The burden of the improvement when ordered, or its cost when constructed, attached to the lot in the possession of any party having an interest therein. Whatever that interest, it was subordinate to that burden or charge, and was liable to be defeated by the sale of the lot regularly made to enforce the collection of the cost."

No other question being presented, we conclude that the judgment should be affirmed.

### On Motion for Rehearing.

[3] It is urged that the pleadings do not authorize the recovery awarded the Whitham appellees herein; the particular contention being to the effect that the cause of action asserted by them is alone confined to J. R. Monroe, one of the vendees under Caruthers, the original grantor of the property. This contention, in effect, was presented in appellant's original brief under assignments and propositions which we indicated in our original opinion was subject to the objections made thereto by appellees, but it is now contended that in the state of the pleadings the judgment rendered by the court in favor of the appellees is fundamentally erroneous, and that the question is available as such, regardless of any failure to conform to the rules in its presentation.

Notwithstanding our failure to discuss the question in our original opinion, and notwithstanding appellees' objection to the propositions under which the question was presented, we did, in perhaps a hurried way, examine the pleadings for the purpose of seeing whether the contention now made was well taken, and after such examination as we made we concluded that the contention should be overruled, and a more careful consideration of the pleadings in considering the motion for rehearing has confirmed our original unexpressed conclusion.

The transcript before us discloses that the trial proceeded upon appellant's third amended original petition and appellees' first amended answer and cross-action; appellant's first and second original petitions and appellees' original answer and cross-action not appearing in the record. Nor do we have before us any pleadings on the part of J. R. Monroe, a subvendee of the Caruthers made a party to the action. In the petition upon which appellant proceeded to trial, he first pleads in the usual form of trespass to try title for the title and possession of the lot in controversy. In a second count appellant urges, in substance, that on the 13th day of September, 1919, Ernest W. Corder made, executed, and delivered to J. Caruthers his four promissory notes for the sum of $700; that said notes for a valuable consideration had been assigned to appellant, together with the vendor's lien securing the same. The petition further alleges several transfers, assumption of promises, payments, etc., on the part of several subvendees, including J. R. Monroe, and alleges that the notes and liens, if any, against said property now held by the defendants Lillian K. Moore, E. N. Ash, C. H. Reid, W. A. Costley, L. E. Whitham, and R. E. Whitham, are second and inferior liens to plaintiff's said lien covering said property.

Other allegations, not thought necessary to notice, follow, being, in substance, a prayer for the recovery of the title and possession of the lot in question, and, in the alternative, "if it be decreed by the court that the plaintiff is not entitled to the judgment sought for herein," that plaintiff have judgment against E. W. Corder for the debt of $4,000, etc., and "for the foreclosure of his lien on the above-described land and premises against each and all defendants, and that the same be decreed to be sold according to law," etc.

In the first amended answer of appellees Whitham, it is alleged that, "by leave of the court and of all counsel involved," they filed "their first amended answer to plaintiffs' petition, answer to the defendant Lillian K. Moore's answer and cross-action against the

defendant J. R. Monroe," and except generally to the "allegations contained in the plaintiff's original and amended petitions, as well as to the cross-action, answer, and pleas set up by the said plaintiff, E. W. Marriott, and the defendants Ernest W. Corder, J. R. Monroe, Lillian K. Moore, E. N. Ash, J. A. Watkins, C. H. Reid, W. A. Costley, and any other parties, whether same be plaintiff or defendant, in the matter at bar, and say that the same are wholly insufficient in law."

Appellees further generally denied each and every allegation in the pleadings above mentioned, and say that the same are not true in whole or in part. Then follow a number of special exceptions to the answer of Lillian K. Moore, and allegations that—

"Said defendant Lillian K. Moore and all other defendants and the plaintiff in this case are barred from any defense of invalidity in the proceedings or assessment levied against the defendant J. R. Monroe, and against the property hereinafter described and against the special assessment hereinafter described, and say that said parties are estopped from denying the validity and binding force and effect of the certificate sued on herein by the terms of said article 1015, c. 11, tit. 22, now article 1096, c. 9, tit. 28, of the Revised Statutes of Texas of 1925."

It is further alleged:

"That said certificate is a valid and binding personal obligation of the defendant J. R. Monroe and a valid binding first and superior lien on the property herein described."

There were other special denials directed to the answer and cross-action of Lillian K. Moore.

Appellees' pleading further answered the defendant J. R. Monroe, setting up the charter of the city of Wichita Falls and the various proceedings resulting in the improvement and assessment, and alleged that the property was then "owned and held of record by the defendant J. R. Monroe," and that the special assessment was assessed against J. R. Monroe as the then owner of the property. It was further alleged that:

"Said lien created by said certificate and assessment is a first and prior lien upon said premises, prior to all liens claimed, asserted, pleaded, or held by either E. W. Marriott, the plaintiff herein, or by either of the defendants William K. Moore, E. N. Ash, C. H. Reid, W. A. Costley, or to all other liens, claims, or rights that may be asserted or claimed by other parties against said premises; that all of the latter mentioned liens, regardless of their amount, date of execution, date of filing, type, assertion as to priority, manner in which same were obtained, assumption, or otherwise, are second and inferior liens to the lien created for the said L. E. Whitham & Co., by said city, by virtue of said assessment and the lien, claim, and indebtedness herein alleged by the said certificate holders."

The prayer was that the premises being considered, the Whithams—

"be declared and adjudged to have a valid and binding first and superior lien upon the property herein described, and a valid and binding personal obligation of the defendant J. R. Monroe; said lien to be declared and adjudged superior to all other liens or claims here pleaded or asserted, and further that they have judgment against the said defendant J. R. Monroe, for the said assessment, together with all accrued interest and reasonable fees for said attorneys."

We think it apparent from the statement of the pleadings as above given, that there is no merit in appellant's contention, to the effect that the record fails to disclose that the cross-action, as it is termed, of the appellees Whithams, had been served upon the appellant, and that said answer was addressed for relief against J. R. Monroe only. It seems evident that all parties were before the court; that appellant distinctly had notice of and answered appellees' contentions by asserting that the vendor's lien claimed by appellant was superior to that claimed by the appellees. The index to the transcript fails to disclose that there was any exception in behalf of appellant to the evidence offered in support of appellees' claim, and, as it appears to us, the issues involved in appellees' right of recovery as against appellant were plainly before the court. Indeed, it might be said that the judgment is supportable in the absence of any special plea of their lien on the part of appellees. Appellant sued for and was permitted a recovery of the title to the land in question. The whole included all interests therein, and the court, in adjudging the relief prayed for in that respect, would seem to have been authorized to only grant such part of the whole as the evidence disclosed appellant was entitled to.

As to the further contentions made in the motion, assailing the validity of the assessment lien and operative force of the charter and laws relating thereto, we adhere to the views briefly expressed in our original opinion, and conclude, on the whole, that the motion for rehearing should be overruled.