C. B. ADAMS ET AL. v. L. C. FISHER, TAX COLLECTOR, ET AL.

(Case No. 2010.)

1. CONSTITUTION CONSTRUED — LEGISLATIVE POWER.— The decision heretofore made, to the effect that the legislature may legally empower a city to impose on the owner of a lot abutting on a street one-third of the cost of improving the street in front of it, followed. (Citing Roundtree *v.* City of Galveston, 42 Tex., 613.)

2. CASE REVIEWED.— Allen *v.* City of Galveston, 51 Tex., 302, reviewed.

3. JUDICIAL POWER — CONSTITUTION.— The delicate duty of deciding an act of the legislature to be in violation of the constitution should be exercised only when the act to be construed is clearly unconstitutional.

4. CASES APPROVED AND FOLLOWED.— City *v.* Heard, 54 Tex., 420; City *v.* Loonie, 54 Tex., 517; Highland *v.* The City, 54 Tex., 527, followed.

5. IMPROVEMENTS OF SIDEWALKS — POLICE POWER.— In view of former decisions in this state, the question is no longer open as to the power of the legislature to authorize a city to compel the owner of a lot abutting on a street to defray a portion of the expense of improving the street, by assessment on the property; and this applies also to paving the street. The same "police power," a power loosely defined and of uncertain limits, which

would authorize a local assessment for a pavement, would seem to authorize it for the street.

6. NOTICE.— It was not made a prerequisite by the charter of the city of Galveston, to the passage of an ordinance for paving a street, that the citizen or abutting owner should be either actually or constructively notified of the intention of the city council to pass an ordinance for that purpose (following City of Galveston v. Heard, 54 Tex., 429), and no such notice is required. (Following the rule laid down in Dillon on Mun. Corp., 803, and Finnell v. Kates, 19 Ohio St., 406.)

7. NOTICE.— If the charter of the city had required notice to be given to the owners of abutting property before fixing an assessment thereon for street improvements in front of it, and no notice had been given, the assessment would be void. But when a charter was granted by the legislature after decisions of the supreme court holding that notice, not being required by the old charter, was not necessary, and no notice was required by the new charter to be given the property holder before assessment, it was tantamount to a legislative declaration that notice was not necessary.

8. NOTICE — STREET IMPROVEMENTS.— The charter of the city of Galveston gave to the property owner no voice in determining whether a street should be improved in front of his property, except as he might exercise it at the ballot-box in aiding to select members of the city council.

9. CITY CHARTER CONSTRUED.— Section 128 of the charter of the city of Galveston did not contemplate that any report of the actual cost of the work of improving a street, which is to be paid for in part by local assessments, shall be made by the engineer until the entire work is completed, or that any assessment shall be made until the entire work then contemplated to be done on the street is completed.

10. TAX SALE — NOTICE.— Unless notice is given after a valid assessment to the property owner that the assessment is due, and of the time within which it is payable, in accordance with the charter and ordinances of the city of Galveston, no levy or sale of property subject to the assessment can be legally made.

APPEAL from Galveston. Tried below before the Hon. Wm. H. Stewart.

Appellants below obtained a writ of injunction restraining L. C. Fisher, tax collector of the city of Galveston, and the city of Galveston, from collecting an alleged local assessment for the grading, filling and paving Mechanic street between 21st and 33d streets, in the city of Galveston, and from enforcing said assessment by selling specified lots fronting on the improvement, and owned respectively by the several appellants, who brought suit for themselves and others.

Appellees moved to dissolve for want of equity in the bill, and demurred generally and specially to the petition. On the hearing, May 3, 1884, the district court sustained appellees' demurrer for want of equity in the bill, and appellants declining to amend, the bill was dismissed and the injunction dissolved.

The issues presented by defendants' demurrer were as follows, viz.:

1. The constitutionality of the city charter, which directs that one-third of the actual cost of the work in front of any lot or fractional lot abutting on any street improvement shall be assessed against such lot.

2. The validity of a local assessment where neither the charter nor the ordinances give the owners of property assessed for street improvement notice or hearing or opportunity to be heard as to the legality of the assessment, and where no such notice or opportunity to be heard has, in fact, been given to said owners.

3. The right of appellants to thirty days' notice, after the completion of the entire work, within the limits improved, before the assessments can become due, and their right to an injunction restraining the city from selling their property for a tax which is not due.

*Trezevant & Franklin,* for appellants, cited: Const., art. 1, secs. 17, 19; Cooley on Tax., 453, 454 and notes on 454; id., 447–453, 460, 416; id., 396–398, and cases cited, note 1; id., 508, and notes 1 and 2; id., 175, 495, 501; Dill. Mun. Corp., § 761, ¶¶ 3, 4, 5, 6; Motz *v.* Detroit, 18 Mich., 522; State *v.* Portage, 12 Wis., 627; People *v.* Lynch, 51 Cal., 15; *Ex parte* Mayor Albany, 23 Wend., 276; Burroughs on Tax., 469; id., 494, 465; Woodbridge *v.* Detroit, 8 Mich., 274; id., p. 298, opinion of Christiancy, J.; Macon *v.* Patty, 57 Miss., 378; Neenan *v.* Smith, 50 Mo., 525; St. Louis *v.* Clemens, 49 Mo., 552; Goddard's Case, 16 Pick., 504; Washington *v.* Nashville, 1 Swan, 177; Whyte *v.* Nashville, 2 Swan, 367; Agens *v.* Mayor, 37 N. J. L., 415; St. John *v.* East St. Louis, 50 Ill., 92; Larned *v.* Chicago, 34 Ill., 203; Washington Av. Case, 69 Pa. St., 353; Lexington *v.* McQuillan's Heirs, 9 Dana, 513; Chamberlain *v.* Cleveland, 34 Ohio St., 551.

On the question of notice, after assessment, and before levy and sale, they cited: Cooley, Const. Lim., 521; High on Inj., §§ 517, 529; Johnson *v.* Hahn, 4 Neb., 143; Abbott *v.* Edgerton, 53 Ind., 196; Freemont *v.* Boling, 11 Cal., 380; Webb *v.* Catsinger, 48 Ind., 246.

*James B. Stubbs* and *F. Chas. Hume,* for appellees, cited:   Allen *v.* City of Galveston, 51 Tex., 317; 2 Dill. Munic. Corp., sec. 753; Garnett *v.* St. Louis, 25 Mo., 515; Palmyra *v.* Morton, 25 Mo., 593; Charter of Galveston, secs. 127, 128, 129; Dill. Munic. Corp., vol. 2,

---

---

sec. 808; Highland *v.* Galveston, 54 Tex., 527; Works *v.* Lockport, 28 Hun, 9; Cooley's Const. Lim., 218, 219, 220, 231; and Moale *v.* Baltimore, 4 Am. & Eng. Corp. Cases, 544.

STAYTON, ASSOCIATE JUSTICE.— It is not denied that sections 127 and 128 of the charter of the city of Galveston are broad enough, in terms, to empower the city to cause its streets to be graded, shelled, repaired, paved or otherwise improved, and to impose upon the owners of property on such streets as are so improved one-third of the cost of the improvement in front of any particular lot or fractional lot, to make one-third of the cost of the improvement of a street in front of a particular lot or fractional lot a charge upon its owner, and a lien upon the lot or fractional lot.

It is denied, however, that the legislature has the power to impose such a charge or create such a lien.

There are but few subjects which have undergone more discussion than this, but it must be admitted that it is now well settled that the legislature has power to impose upon the owners of property, and upon property in towns and cities, charges for the purpose of making local improvements upon streets, which are not charges upon the people or property at large, unless restrained by some constitutional provision.

In this case we do not understand the existence of this power to be questioned.

The contention is that the legislature has not the power to impose the charge in the manner provided in the charter of the city of Galveston. As the immediate question now before us stands under adjudications made in this state under constitutional limitations in no essential respect different from those found in the present constitution of this state, we have no disposition to enter into a discussion of the limits of legislative power of taxation.

In the case of Roundtree *v.* City of Galveston, 42 Tex., 613, the question now before us was presented and considered, and it was therein held that the legislature might legally empower the city to impose on the abutting lot owner and lot one-third of the cost of the improvement of the street in front of it.

In the case of Allen *v.* The City of Galveston, 51 Tex., 302, the same question arose, and it was held that the imposition of the tax in that case was illegal, for the sole reason that one-third of the expense of improving the street in front of a particular lot was not imposed on it in accordance with the terms of the charter.

The manner in which the burden in that case was attempted to

be imposed was more in harmony with that which counsel for appellant in this case claim to be the true method than that provided by the charter.

In disposing of the question the court said: "The legislative intention seems to have been to apportion to each lot or fractional lot one-third of the probable cost or estimated expense for shelling that part of the street opposite to such lot or fractional lot. This mode of assessment must be assumed to have been adopted by the legislature as substantially apportioning the cost with reference to the benefit received. At best, and by any mode of assessment adopted, it is only practicable to approximate the relative benefit to each lot from the improvement, and in this case we cannot say that the mode of apportionment was otherwise than valid and proper. The power conferred on the council by the charter was certainly only to assess against each lot or fractional lot one-third of the expense, estimated or actual, of the shelling of that part of the street opposite that lot or fractional lot. . - . The power to shell the streets and to assess two-thirds of the cost on the property owners was undoubtedly vested in the council. By their action they were enabled to create a charge on the lots fronting on the street shelled."

There is no duty more delicate than that which one department of a government assumes when it undertakes to declare the act of another co-ordinate department in violation of the constitution, and to justify it in any case the act should be one clearly in conflict with that instrument.

In the face of the former decisions of this court as to the validity of the act in question, and of the conflict of authority elsewhere upon the question, which of itself is very strong evidence of the fact that the question, to say the least, is one of great doubt, we can but feel that we would be transcending the proper limits of judicial action were we to declare void the sections of the charter of the city of Galveston in question.

We find no express warrant in the constitution for such a holding, and may repeat, as illustrative of our own views, the language of a distinguished writer: "It may be true that in some instances more hardship will be occasioned by requiring each owner to make or pay for the improvement in front of his own property than if the cost were assessed on the basis of frontage or of supposed benefits received; still it seems to the author difficult to find satisfactory and solid grounds on which to discriminate the cases so as to hold that one is within the constitutional power of the legislature and the other is not." Dillon on Municipal Corporations, 753.

---

Opinion of the court.

---

The power of the legislature to impose upon the owner of a lot in a town or city the burden of making or improving sidewalks in front of his lot is very generally recognized.

This power has been recognized in this state in the following cases: City v. Heard, 54 Tex., 420; City v. Loonie, 54 Tex., 517; Highland v. City, 54 Tex., 527.

It is exceedingly difficult to draw the line between the power to compel the owner to bear the burden of making sidewalks, which are but a part of the street, and the power to compel the same person to bear the burden of improving other parts of the street in front of his lot.

The power in the one case and in the other would seem to be not different in character, but only in degree, having in common, as the basis of the power, the real or supposed benefit resulting to the owner or his property by the improvement.

The one is said to be the exercise of police power, while the other is referred to the power of taxation.

Call this power what we may, when applied to the improvement of any part of a street for the convenience or welfare of the people at large, there is such a kinship and resemblance in all its characteristics that it may be true that the phrase "police power," than which none, when applied to the matter in question, is less accurately defined, has been too often used to indicate a difference which has no existence in fact or principle.

In view of the former decisions in this state, we do not feel at liberty to consider the question now before us as an open one, although, from a remark made in Lufkin v. City of Galveston, 58 Tex., 549, it may have been thought to be so.

It is urged that the assessment was illegal because the persons to be affected were not notified and given an opportunity to be heard prior to the making of the assessment.

This assumes that the existing and alleged facts did not constitute notice. The contrary was practically decided to be true in the City of Galveston v. Heard, 54 Tex., 429.

Neither the charter of the city, nor the ordinances regulating the matter, require that notice of the intention of the city council to order the work upon a street to be done, or of the intention of the city council to make the assessment therefor, or of the time and place when and where these things would be acted upon, shall be given otherwise than as this may be done through the ordinances and resolutions directing the work to be done and making assessments, and through that knowledge which every owner of real

property is presumed to have of that which is done upon his property.

Under the facts of this case, however, we cannot regard the question as an open one in this court. This question arose in the City of Galveston v. Heard, 54 Tex., 429, and in the opinion it was said that "It was not made a prerequisite by the charter to the passage of an ordinance for paving . . . that the citizens or abutting owners should be either actually or constructively notified of the intention of the city council to pass an ordinance for the construction of sidewalks to be charged to abutting owners. The city had the authority to pass an ordinance for the construction of sidewalks to be a charge upon abutting owners, without any published notice inviting bids for the work, but giving authority to the mayor or other city officials to enter into private contracts for the work, if the contract was fair and reasonable and untainted by fraud or oppression. . . . The passage of the sidewalk ordinance was *per se* notice to all the citizens, the law presuming that all the citizens of the municipality know her laws. After the work was done the assessment was simply a matter of measurement to ascertain the cost, and report the same to the council under the prescribed form, which did not require any other notice to the abutter than such as every lot owner is supposed to take of what is being done upon his sidewalk. . . . Neither the charter nor the ordinance having required any notice to the abutter prior to the assessment, and the nature or character of the work to be done, and the assessment not being such as to require prior notice of the assessment, it is not perceived that any principle of law, or public policy in the nature of law, has been violated in the charter or ordinance providing for the construction of city sidewalks, and the assessment of the cost upon the abutting lots strictly upon the frontage." The rule is thus stated by Mr. Dillon: "It depends upon the provisions of the special charter or legislative act whether or not *notice to the abutter* or proprietor is necessary in order to make him liable to pay the expense or cost of the local improvement and in what manner it shall be given." Dillon on Mun. Corp., 803.

This rule is recognized in Finnell v. Kates, 19 Ohio St., 406; and in Inhabitants of Palmyra v. Morton, 25 Mo., 597, it was held that a resident of a corporation is presumed to have notice of an ordinance directing such improvements to be made, and that other notice was not necessary. To the same effect is Highland v. City of Galveston, 54 Tex., 534.

The section of the charter under which the assessment in this case

was made was enacted since the decisions before referred to were rendered, and it is to be presumed with reference thereto, and the failure to provide that notice should be given is to be construed as a legislative declaration, that such assessments might be made without further notice than would be given by the passing of the ordinances or resolutions through and under which the assessment was made.

In Hewes v. Reis, 40 Cal., 263, it was held that " it was competent for the legislature to have authorized the board to make the contract without publishing notice of intention, and without inviting bids, and then to have compelled the defendant to pay the amount through its sovereign power of taxation," in cases of this character.

If the charter or ordinances had required notice to the owners of abutting property, the assessment without such notice as thus prescribed would have been void, unless the person to be charged had in some way waived it, or done some act which would operate as an estoppel. State v. Mayor, 7 Vroom, 159; City of Lafayette v. Fowler, 34 Ind., 146; City of New Haven v. R. R. Co., 38 Conn., 432; Liebstein v. Mayor, etc., 24 N. J. Eq., 205; State v. Jersey City, 26 N. J. Law, 447; State v. Mayor, etc., 36 N. J. L., 161.

The charter gave to the property owner no voice in determining whether the street should be improved or not, except in so far as he could exercise it in the election of members of the city council favorable or adverse to such work, and in this respect notice would have been of no value.

The actual cost of the work in front of each lot or fractional lot determined the amount of the assessment against it and its owner, and it is not urged that the assessment exceeds the proper cost; on the contrary, the petition expressly avers that each of the plaintiffs are charged by the assessment " with *one-third of the actual cost* " of the work done in front of their respective lots.

This is not a case in which the assessment against each property owner was to be determined by an investigation to be made in some manner pointed out by the charter for the purpose of ascertaining the benefit received by each lot or fractional lot, with a view to imposing upon it its proportional share of the cost of the entire street improvement, to be ascertained by the benefit received by each. The legislature had determined the proportion which each lot or fractional lot should pay of the entire cost, and this left nothing to be ascertained except the actual cost of the improvement in front

of each lot, and it provided the manner in which this should be ascertained.

It is urged that, under the terms of ordinance No. 28, written notice should have been given for thirty days, after the entire work on the street·was completed and accepted, that the ·assessments would be due and payable within that time after notice, and that until such notice was given and the time had expired, the collecting officer was not empowered to seize, advertise or sell property to pay the assessment.

Section 129 of the charter provides:

" That after such action (the action of the city council making the assessment after the work is completed) on the part of the city council, as above provided for, the collector shall give notice, as may be required by ordinance, of said assessment being due, and within what time payable, and shall commence forthwith to collect the same. That after the expiration of the period for payment of said assessment, said officer shall levy on so much of any property on said list in which said assessment has not been paid as will be sufficient to pay the same. . . . And if said assessment is not paid before the day of sale, said officer shall sell," etc.

The ordinance to give effect to this provision of the charter requires notice to be given for thirty days that the assessment and interest will be due and payable, after the expiration of which time, it provides, in accordance with the charter, that the collector may levy and sell so much of the property against which the assessment is made, if not paid, as may be necessary to pay it.

We are of the opinion that section 128 of the charter does not contemplate that any report of the actual cost of the work done on the street shall be made by the engineer or other officer until the entire work is completed; and that it does not contemplate that any assessment shall be made until the entire work, then contemplated to be done on the street, is completed.

The report of the engineer was made October 15, 1883, showing the entire work and the cost of the improvement in front of each person's property, and on the same day the assessment was made in accordance with the report of the engineer, which was accepted and adopted, and on the same day the assessments were turned over to the collector with instructions to collect.

It is averred that after that date no notice that the assessments were due and payable was ever given to the plaintiffs in this cause.

The petition alleges, however, that partial reports were made by the engineer showing the completion of the work in front of the

property of the several plaintiffs and that these reports were accepted and adopted, and assessments thereon made by the council, which were turned over to the collector, prior to the final report and assessment, of which notice was given to the plaintiffs by the collector and payment demanded. This, we are of the opinion, was not a compliance with the law.

Until the work on the street was completed, report made and adopted, and assessment made, no tax was due; and the collector could have no power to give notice contemplated by the law, which would authorize him, on failure of the property owner to pay the tax, to collect it or to levy upon property to enforce its collection.

. It may be that the legislature thought that it would be improper to collect the tax from the property owner, or to make the assessment, before the street through the entire length which it was to be imposed was completed, and could be used; but it is unnecessary to consider the reasons which may have influenced the legislature.

It is enough that no valid assessment was made prior to October 15, 1883, and that since that time no notice has been given to the property owner that the assessment was due and within what time payable; for until these things were done, in accordance with the charter and ordinances, no levy or sale of property subject to the tax could legally be made. Cooley on Taxation, 304, 333.

For this reason the judgment will be reversed and the cause remanded; and it is so ordered.

REVERSED AND REMANDED.

[Opinion delivered March 24, 1885.]

WEST, J., not sitting.