CITY OF TYLER v. CAIN. (No. 1978.)

(Court of Civil Appeals of Texas. Texarkana.
May 23, 1918. Rehearing Denied
May 30, 1918.)

CONSTITUTIONAL LAW ⊕290(1) — DUE PROCESS—CONSTRUCTION OF SIDEWALK—CHARGING LOT OWNER—BENEFITS.

The Legislature of the state could authorize a municipal corporation to charge the owner of a city lot with the cost of constructing a sidewalk in front of it, without reference to whether the lot was benefited by the improvement or not; such action not amounting to a taking of property without due process of law, as the act of the Legislature was referable to its police power.

Appeal from District Court, Smith County; J. R. Warren, Judge.

Suit by the City of Tyler against Ben B. Cain. From judgment of dismissal, plaintiff appeals. Reversed, and cause remanded.

Appellant was the plaintiff in the court below. Demurrers to the petition having been sustained, and appellant having refused to amend same, the suit was dismissed. The appeal is from the judgment of dismissal.

The petition is too long to set out here. In it appellant alleged:

(1) That prior to April 6, 1915, when it adopted a charter as authorized by the act approved April 7, 1913, it was a municipal corporation by virtue of a charter granted to it by a special act of the Legislature approved April 18, 1907 (Spec. Acts 30th Leg. c. 101) and amended by an act approved August 30, 1911 (Sp. & Loc. Acts 32d Leg. [1st called Sess.] c. 4). It then alleged that its city council, on May 5, 1908, in the exercise of power conferred upon them by said special act, passed an ordinance as follows:

"Section 1. Whenever the city council shall, by a two-thirds vote of its entire membership, deem it to be the public interest to have the sidewalk or sidewalks, or any part thereof along any particular street or streets within the corporate limits of the city of Tyler built, repaired or paved, it shall give notice to the owners of property along such street or streets to build, repair or pave such sidewalks in the following manner, to wit: The said notice shall be by an ordinance regularly passed by a vote of not less than two-thirds of the entire membership of the city council; said ordinance shall prescribe the character of the sidewalk to be built, repaired or paved, the kind of material to be used, give the grade as established by the city engineer; requiring the owners of property along, adjacent to, or abutting on such street or streets to build, repair or pave such sidewalk or sidewalks within a time to be fixed by said ordinance not longer than 90 days after the passage of said ordinance.

"Sec. 2. When the city council contemplates the building or repairing of any sidewalk in any district in said city of Tyler it shall be the duty of the city engineer to establish the grade of said sidewalk, if same has not been done, and make a report in writing to the city council, giving the said grade, recommending the kind of material to be used in the construction of such sidewalk, and the approximate cost of said sidewalk, and if said cost does not exceed 15 per cent. of the assessed value of the adjacent and abutting property to such sidewalk the city council may pass an ordinance as described and in the manner as prescribed in section 1 of this ordinance, and when so passed it shall be sufficient notice of its contents and passage to the owners of property adjacent to, abutting on, or along such sidewalk, whether such owners are residents or nonresidents of said city, and it shall be the duty of such owners of property to immediately thereafter comply with the requirements of such ordinance."

Section 3 specifies kind of material to be used in paving.

Section 4 confers on owner right to choose between different kinds of paving material.

"Sec. 5. Should any person, firm or corporation required by said ordinance, passed in the manner as prescribed in this ordinance, to build, repair or pave a sidewalk, fail or refuse to do so within the time designated in said ordinance; then the mayor is authorized to enter into a contract approved by the council, to have said sidewalk or any part thereof built, repaired or paved, and upon completion of said work the same shall be a lien against adjacent property for the contract price thereof, and the mayor may or may not advertise for bids for such work. When said work is done the mayor may in one general affidavit or in separate affidavits, as he may deem best, make a statement under oath showing the cost under said contract of building, repairing or paving the sidewalk adjacent to each separate piece or lot of property, giving the name of owner thereof as known to him, and description of the property sufficient to identify it; provided that no mistake of name or owner or description of property shall vitiate or defeat the lien on said property. Said affidavit shall be filed for record in the deed records of Smith county, Texas, and when so filed for record it shall fix the amount thereof as a preference lien against each respective piece or lot of property, and a personal demand against the true owner thereof, and shall further be prima facie evidence that all necessary preliminary things have been done to establish such lien and the amount thereof; except the passage of the original ordinance requiring said sidewalk to be built, repaired or paved as the case may be, which must be proved independently; and when said lien has been so established it may be foreclosed in any court of competent jurisdiction; provided that in no case shall the owners of property be required to make the improvements as hereinbefore when the cost of such improvement shall be more than 15 per cent. of the assessed value of the adjacent property."

(2) That on December 6, 1912, its said city council passed a resolution showing that the city engineer had made an estimate of the probable cost of constructing sidewalks along part of Railroad avenue, and that said council—

"having heard evidence and being fully advised thereon, is of the opinion and here now finds that the cost of building and constructing the sidewalks will not materially exceed the special benefits that each respective lot or piece of property fronting or adjacent to said property of said street will derive from the building and construction of said sidewalks."

(3) That on said December 6, 1912, its said city council passed an ordinance establishing the grade for the contemplated sidewalk on Railroad avenue, and on the same day passed another ordinance, as follows, so far as it is material to state it:

"Notice and opportunity to contest the question of benefit by this council having been given as required by law, and the city engineer having

made an estimate showing the probable cost" of the proposed sidewalk on Railroad avenue, "and said council having evidence and having determined by resolution that the cost of building such sidewalk * * * would not materially exceed the special benefit to be derived therefrom to each respective lot or piece of property, and the council being of the further opinion that the special benefit to each respective lot or piece of property to be derived from the construction of such sidewalk adjacent thereto will largely exceed the cost of constructing same, and believing that the same is to the best interest of the city of Tyler, it is required that a brick sidewalk No. 2 or a cement sidewalk No. 2 as described in an ordinance entitled 'The Sidewalk Ordinance,' heretofore passed on the 5th day of May, 1908, be built and constructed at the grade heretofore established by ordinance on the following portions of the east and west side of Railroad avenue [description omitted]. The above-described sidewalk to be built and constructed on the grade as heretofore established by ordinance, and the cost and expense of constructing and building, same is to be borne and paid by the owners of each respective lot, lots or pieces of property adjacent thereto, each respective owner or owners to construct and build such sidewalk along said street for the full distance his, hers, its or their land adjoins the same. This ordinance must be complied with within sixty days from its passage and approval. Should any person, persons, firm or corporation required by this ordinance to build and construct a sidewalk fail to so build or construct the same in the time, manner and form as by this ordinance is required, then the mayor of the city of Tyler is authorized and instructed to proceed as directed and provided by the city charter of said city, which it has adopted as proper and just, to have said sidewalk or any part thereof built and constructed and to fix the costs thereof as a lien against each respective lot or piece of property adjacent to the sidewalk so built and constructed and a personal demand against the respective owner or owners thereof in the manner and form as by the terms of said charter are permitted and provided."

(4) That appellee owned certain lots, describing them, which abutted on the sidewalk to be paved, and that although he had been given—

"due notice as required by law to construct a sidewalk, in accordance with said ordinances, in front of the property owned by him, he had wholly failed and refused to do so."

(5) That the city therefore had the sidewalk constructed at a cost of $417.20, and fixed a lien therefor on the lots by proceedings fully set out.

Appellant then alleged as follows:

"If, for any reason, the court should hold that plaintiff cannot recover the stipulated amount paid by it covering the cost of constructing said sidewalk for defendant, and fixed by plaintiff as charge and lien against defendant's said premises, under the terms of plaintiff's said charter, or, if the court, for any reason, should hold that the legislative authority vested in plaintiff expressed in said charter provisions, and the procedure followed by plaintiff thereunder, and the notice and opportunity to be heard on special benefits given to defendant by plaintiff and the finding and declaration by plaintiff that the special benefits accruing to defendant's said premises by reason of said sidewalk construction would exceed the cost thereof, and if, notwithstanding these things, the court should hold that such legislative authority granted to plaintiff and the said procedure followed by plaintiff are not conclusive upon defendant, then, in such event, plaintiff sues to recover from defendant such an amount, not to exceed the said sum of $417.20, as would be equal to the special benefits that accrued to defendant and to his said premises from and because of said sidewalk construction. And for further plea in this behalf plaintiff shows to the court that through and by the unanimous vote of its city council it determined and declared by ordinance and resolution the advisability and necessity of having sidewalks constructed along Railroad avenue in said city fronting, among others, defendant's said premises; that plaintiff established by ordinance and resolution a grade for said sidewalk, its kind and character, material and width and the proximate cost thereof; that prior to the passage of the ordinance requiring said sidewalk construction it gave notice and opportunity to defendant to appear and contest the question of special benefits, and that it found, determined, and declared that the cost of such sidewalk construction would not exceed the special benefits accruing to defendant's property therefrom; that it by ordinance ordered and gave notice to defendant to construct said sidewalk, and gave defendant a reasonable time within which to comply with said order; that defendant wholly failed and refused to construct such sidewalk, or any part thereof; that upon such failure, plaintiff's mayor, by order of plaintiff's city council entered into a contract which was approved by said council under and by which said sidewalk was constructed; that the contract cost thereof was the sum of $417.20, which was paid by plaintiff, and which was a reasonable, just, and proper amount and charge for such improvement; that said portion of said Railroad avenue whereon plaintiff's said premises abuts is within two blocks of the business section of the city of Tyler, and is an important and much-used thoroughfare; that plaintiff is a populous city, and said section along it, said Railroad avenue, is thickly inhabited, and this, together with the ingress and egress in and along said Railroad avenue to and from plaintiff's said business district, necessitates constant and great traffic of pedestrians; that the construction and maintenance of said sidewalk is and was necessary to the public health, safety, and convenience of plaintiff's inhabitants; that said sidewalk construction and improvement greatly enhanced the value of defendant's said premises; and that the special benefits accruing to said property from said sidewalk construction and improvement greatly exceeded the cost thereof."

The prayer was for judgment for $417.20 as the cost of sidewalk, for a foreclosure of the lien asserted against the lots belonging to appellee and fronting on such sidewalk, and for general relief.

Sections 17 and 19 of article 1 of the Constitution of this state are as follows:

"Sec. 17. No person's property shall be taken, damaged or destroyed for, or applied to, public use without adequate compensation being made, unless by the consent of such person."

"Sec. 19. No citizen of this state shall be deprived of life, liberty, property, privileges or immunities, or in any manner disfranchised, except by the due course of the law of the land."

A clause in section 1 of the Fourteenth Amendment to the federal Constitution is as follows:

"Nor shall any state deprive any person of life, liberty or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws."

The demurrers to appellant's petition were sustained, it seems, on the theory that the provisions in its charter under which it claimed a right to assess against appellee

the cost of building the portion of the sidewalk in front of his lots were violative of the parts of the state and federal Constitutions set out above, in that they authorized appellant to assess against the owners of lots the cost of building sidewalks in front thereof without first giving the lot owners notice and an opportunity to contest the justness of such assessment, and without regard to whether the lots were benefited by the building of the sidewalk or not.

The provisions of appellant's charter at which the demurrers were directed were as follows:

"Sec. 21. The city council shall have power * * * to establish and construct sidewalks and to regulate the use and construction of the same and material used in such construction, * * * and the cost of the construction of all such sidewalks * * * shall be defrayed by the owners of the lots or block on which sidewalks may front, * * * and the cost of same, together with the cost of collection thereof, shall be good and valid charge against the owners of such lot or lots or block and a lien and incumbrance upon the lot or part of the lot, or premises upon which or in front of which such improvements may be constructed, which amount shall be assessed as a tax against the property and the owners thereof and may be collected and the lien foreclosed in any court having jurisdiction.

"Sec. 22. The city council shall have power * * * to require and compel the owners of property to fill up, grade, gravel and otherwise improve the sidewalks in front of and adjoining their property.

"Sec. 28. The city of Tyler is authorized and empowered to fix liens upon abutting or adjacent property and personal demands against the owners thereof for the building, improvement or repair of the sidewalk upon or adjacent to said property. The method of fixing said lien under this act shall be substantially as follows," etc.

F. V. Hughes, of Tyler, for appellant. Price & Beaird, of Tyler, for appellee.

WILLSON, C. J. (after stating the facts as above). Unless such action was demanded by the decision of the federal Supreme Court in Village of Norwood v. Baker, 172 U. S. 269, 19 Sup. Ct. 187, 43 L. Ed. 443, or the decision of the Supreme Court of this state in Hutcheson v. Storrie, 92 Tex. 685, 51 S. W. 848, 45 L. R. A. 289, 71 Am. St. Rep. 884, the demurrers to the appellant's petition should not have been sustained; for before those cases were decided it had been determined by the Supreme Court of this state, in conformity to the view generally prevailing, that the Legislature might authorize a municipal corporation to charge the owner of a city lot with the cost of constructing a sidewalk in front of same, without reference to whether the lot was benefited by the improvement or not. City of Galveston v. Heard, 54 Tex. 420; City of Galveston v. Loonie, 54 Tex. 517; Highland v. City of Galveston, 54 Tex. 527; Adams v. Fisher, 63 Tex. 651; Adams v. Fisher, 75 Tex. 657, 6 S. W. 772. "The power of the Legislature," said the Supreme Court in the Adams Case, 63 Tex. 656, "to impose upon the owner of a lot in a town or city the burden of making or improving sidewalks in front of his lot is very generally recognized."

We do not think the decision in either the Village of Norwood Case or the Hutcheson-Storrie Case requires a departure from the rule applicable before they were decided to cases like this one; and therefore we are of the opinion the trial court erred when he sustained the demurrers to appellant's petition and dismissed its suit.

In the case decided by the federal Supreme Court the village of Norwood, in extending a street across land belonging to Mrs. Baker, took $2,000 worth of the land. In the exercise of power conferred by the Legislature the village then assessed back, upon land belonging to Mrs. Baker fronting on the street as opened, the $2,000 it paid her for the land it took for the street, and in addition thereto $218.58 as the expense it incurred in taking it. The result of this mode of procedure, as pointed out by the Supreme Court of Missouri in Heman v. Allen, 156 Mo. 534, 57 S. W. 559, was that the village of Norwood got the part of Mrs. Baker's land it needed for a street for nothing, "and charged her $218.58 for taking it." The federal Supreme Court held that the attempt of the Legislature to confer power on the village to do that was violative of the clause in section 1 of the Fourteenth Amendment to the federal Constitution set out in the statement above, and affirmed the judgment of the circuit court, holding the assessment against Mrs. Baker void, "upon the ground," it was stated—

"that the assessment against the plaintiff's abutting property was under a rule which excluded any inquiry as to special benefits, and the necessary operation of which was, to the extent of the excess of the cost of opening the street in question over any special benefits accruing to the abutting property therefrom, to take private property for public use without compensation."

In Hutcheson v. Storrie it appeared that the city of Houston, by virtue of authority conferred by its charter, had assessed against a tract of about 20 acres of land and some other lots, situated in a sparsely settled portion of the city and belonging to Mrs. Hutcheson, the cost of paving the part of the Harrisburg road on which said land and other lots abutted. The Supreme Court of this state, on the theory that the Supreme Court of the United States had held in the Village of Norwood Case that the Legislature of a state cannot confer upon a municipal corporation authority "to assess upon abutting property the cost of a public improvement in a sum materially exceeding the special benefits which that property may derive from the work," nor authority "to make such assessment conclusive upon the owner without giving an opportunity to contest the question of benefits," held that the

charter of the city of Houston, so far as it purported to confer such authority, was violative, not only of said clause in section 1 of said Fourteenth Amendment, but also of sections 17 and 19 of article 1 of the Constitution of this state, set out in the statement above, and accordingly held the assessment made against Mrs. Hutcheson's property to be void.

The value of the Village of Norwood Case as authority has been greatly weakened by later decisions of the federal Supreme Court. French v. Barber Asphalt Paving Co., 181 U. S. 324, 21 Sup. Ct. 625, 45 L. Ed. 879; Wight v. Davidson, 181 U. S. 371, 21 Sup. Ct. 616, 45 L. Ed. 900; Town of Tonawanda v. Lyon, 181 U. S. 389, 21 Sup. Ct. 609, 45 L. Ed. 908; Webster v. City of Fargo, 181 U. S. 394, 21 Sup. Ct. 623, 45 L. Ed. 912; Cass Farm Co. v. City of Detroit, 181 U. S. 396, 21 Sup. Ct. 644, 45 L. Ed. 914; City of Detroit v. Parker, 181 U. S. 399, 21 Sup. Ct. 624, 45 L. Ed. 917; Chadwick v. Kelly, 187 U. S. 540, 23 Sup. Ct. 175, 47 L. Ed. 293; Railway Co. v. Barber Asphalt Paving Co., 197 U. S. 430, 25 Sup. Ct. 466, 49 L. Ed. 819. The authorities on the question, including the Village of Norwood Case, were reviewed in the opinion of the court in the first one of the cases just cited. The court stated that the ruling in the Village of Norwood Case had been misunderstood, and strongly intimated that the holding in that case was justified by its peculiar facts alone, and that it should not be regarded as authority for determining cases with different facts. As a result of the careful consideration given the question, the court held, quoting the syllabus:

"The apportionment of the entire cost of a street improvement upon the abutting lots according to their frontage, without any preliminary hearing as to benefits, may be authorized by the Legislature, and this will not constitute a taking of property without due process of law."

Based, as it was, entirely on the Village of Norwood Case, the force of Hutcheson v. Storrie as authority also is, of course, weakened by the ruling in the later cases decided by the federal Supreme Court, cited above, and it has been suggested, with good reason, we think, that it, too, should be limited to its particular facts. Texas Bitulithic Co. v. Abilene Street Ry. Co., 166 S. W. 437; and see Lentz v. City of Dallas, 96 Tex. 258, 72 S. W. 59; City of Harrisburg v. McPherran, 200 Pa. 343, 49 Atl. 988; King v. City of Portland, 38 Or. 402, 63 Pac. 2, 55 L. R. A. 812.

But, whatever view may be taken of the Village of Norwood Case, when the question is as to the power of the Legislature to authorize a municipal corporation to charge the cost of opening a street against the owner of the land taken for the street, or of the Hutcheson-Storrie Case, when the question is as to the right of the Legislature to confer upon a municipal corporation power to charge against the owners of lots abutting on it the cost of paving a street, we think the act of the Legislature, conferring upon the city of Tyler power to charge against lots abutting on a street the cost of building a sidewalk in front thereof, was referable to its police power, and therefore was not violative of either the clause in question of the federal Constitution or sections 17 and 19 of article 1 of the state Constitution. Black's Constitutional Law, § 156; Cooley on Taxation, 1128. In the work last cited Judge Cooley said:

"The cases of assessments for the construction of walks by the side of the streets in cities and other populous places are more distinctly referable to the power of police. These footwalks are not only required, as a rule, to be put and kept in proper condition for use by the adjacent proprietors, but it is customary to confer by municipal charters full authority upon the municipalities to order the walks of a kind and quality by them prescribed to be constructed by the owners of adjacent lots at their own expense, within a time limited by the order for the purpose, and, in case of their failure to so construct them, to provide that it shall be done by the public authorities, and the cost collected from such owners or made a lien upon their property. When this is the law the duty must be looked upon as being enjoined as a regulation of police, because of the peculiar interest such owners have in the walks, and because their situation gives them peculiar fitness and ability for performing, with promptness and convenience, the duty of putting them in proper state, and of afterwards keeping them in a condition suitable for use. Upon these grounds the authority to establish such regulations has been supported with little dissent. No doubt this requirement is sometimes in a measure oppressive, since the actual cost may exceed the pecuniary advantage to the lot owner; but this, in the case of police regulations, is never a conclusive objection."

The judgment is reversed, and the cause is remanded for a trial on its merits.

